J-S54007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JAMES P. WEAVER, JR. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AMY NEAL HUSS, | |
| Appellant | No. 1142 WDA 2015 |

Appeal from the Order Entered June 25, 2015
In the Court of Common Pleas of Washington County
Civil Division at No(s): No. 2010-10883

BEFORE:  BENDER, P.J.E., OTT, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:           **FILED SEPTEMBER 09, 2016**

Amy Neal Huss (Mother) appeals from the trial court's June 25, 2015 order finding her in contempt with regard to eight out of nine contempt petitions filed by James P. Weaver, Jr. (Father), relating to her ongoing failure to comply with numerous court orders that arose in the context of litigation about custody of the parties' child, A.J.W. (Child) (born in November of 2010).  As a sanction against Mother, the court awarded Father $10,960 in reimbursement for counsel fees.  After review, we affirm.

> "When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow:  we will reverse only upon a showing the court abused its discretion."  **Harcar v. Harcar**, 982 A.2d 1230, 1234 (Pa. Super. 2009) (quoting **Hopkins v. Byes**, 954 A.2d 654, 655 (Pa. Super. 2008)). We also must consider that:
>
>> Each court is the exclusive judge of contempts against its process.  The contempt power is essential to the preservation of the court's authority and

prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge.

*Langendorfer v. Spearman*, 797 A.2d 303, 307 (Pa. Super. 2002) (quoting *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001)). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Godfrey v. Godfrey*, 894 A.2d 776, 780 (Pa. Super. 2006). Additionally, "[i]n proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate, by [a] preponderance of the evidence that the defendant is in noncompliance with a court order." *Lachat v. Hinchliffe*, 769 A.2d 481, 488 (Pa. Super. 2001). However, a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt." *Id.* Moreover, we recognize that:

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Stahl v. Redcay*, 897 A.2d 478, 489 (Pa. Super. 2006).

*Habjan v. Habjan*, 73 A.3d 630, 637 (Pa. Super. 2013).

In her brief to this Court on appeal, Mother lists the following issues for our review:

I. Did the trial court commit an abuse of discretion by finding Mother in civil contempt multiple times for violations of two (2) [o]rders of [c]ourt when there were no purge conditions stated or findings that Mother violated clear and specific provisions of the [o]rders and that Mother acted with wrongful intent?

II. Whether the trial court committed an abuse of discretion in awarding Father $10,960 in counsel fees for Mother's civil contempt without making a determination as to the

- 2 -

reasonableness of the fees as it related to the various [c]ontempt [m]otions?

III. Whether the trial court committed an abuse of discretion in awarding counsel fees years after the complained of contemptuous behavior?

Mother's brief at 4.[1]

Our review of this matter has encompassed the certified record, the parties' briefs, the pertinent law, and the Honorable John F. DiSalle's opinion, dated January 6, 2016. Having concluded that Judge DiSalle's opinion properly disposes of the issues Mother raises on appeal, we adopt Judge DiSalle's opinion and affirm the June 25, 2015 order for the reasons stated therein.

Order affirmed.

_____

[1] In the context of our review of this case, we note that Mother alleges that the court never stated whether it found Mother in civil or criminal contempt, that the court did not state whether the counsel fee award was a sanction or was intended as a reimbursement to Father for costs of litigation, and that the court failed to explain why its June 25, 2015 order finding contempt was delayed by fifteen months after the custody trial was concluded in March of 2014. We suggest that Mother review the court's opinion and particularly note that the court identifies its actions as one in civil contempt. Trial Court's Opinion, 1/6/16, at 10. The court also explains that the award is a "reimbursement for counsel fees as a sanction." *Id.* at 1. Additionally, the court relates that "by agreement of the parties, court action on these contempt petitions was ultimately deferred until the conclusion of the custody hearings." *Id.* at 1-2.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/9/2016

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
CIVIL DIVISION

JAMES P. WEAVER, Jr.,            )
                                 )
            Plaintiff,           )
                                 )
    vs.                          )        No. 2010-10883
                                 )
AMY NEAL HUSS,                   )
                                 )
            Defendant.           )

## OPINION

This is an appeal from the order of the trial court dated June 25, 2015, disposing of the

nine (9) separate contempt petitions filed by Father, plaintiff James P. Weaver ("Father"), against

Mother, defendant Amy Neal Huss ("Mother), over the course of nearly four years of litigation

arising out of the custody of the parties Minor Child A.J.W., now age five (born November 3,

2010). The trial court made findings of contempt against Mother in all but one of the nine (9)

contempt petitions and awarded Father $10,960 in reimbursement for counsel fees as a sanction.

From this order, Mother filed a timely appeal to the Superior Court of Pennsylvania.


## Procedural History:

These nine (9) petitions for contempt were brought by Father over the course of the

lengthy custody litigation, alleging Mother's willful disobedience of the interim custody orders

dated January 6, 2011 and March 10, 2011, and the orders dated March 1, 2012 and April 15,

2013. Father alleges Mother's contempt of the orders for missed visits, interference with visits,

failure to complete the mandatory parenting program, and failure to provide notice of the Child's

medical and therapy appointments. Although in some instances, a hearing date was scheduled

upon the initial presentation of the petitions, by agreement of the parties, court action on these

1

contempt petitions was ultimately deferred until the conclusion of the custody hearings. Upon the close of the record of the custody trial *de novo* on March 14, 2014, Father's counsel made a brief summation of the contempt petitions, offered the petitions into evidence as exhibits, and referred to testimony previously presented over the course of the custody hearings. Father also submitted documentation of attorney's fees he had incurred in the litigation of this custody action, in excess of $91,000.[1]

Mother was afforded ample opportunity to be heard and present a defense to the contempt petitions. Mother's prior counsel had filed written answers to some of the petitions contemporaneous with their presentation. At the close of the proceedings on March 14, 2014, the parties then suggested and the trial court agreed to allow Mother's new counsel to submit written responses to the contempt petitions within thirty (30) days, and that the petitions would be decided without further testimony. Mother did file *pro se* written responses to the remaining contempt petitions. Accordingly, the trial court issued its decision on the contempt petitions based on the record before it, the petitions and the responses.

In reviewing these contempt petitions, the trial court noted that its contempt power is "essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute." *Garr v. Peters*, 773 A.2d 183, 189 (Pa.Super. 2001).[2]

As set forth below, there was no allegation or evidence presented that Mother did not have the present ability to comply with the trial court's orders, with one exception. With respect to Father's contempt petition filed March 24, 2011, Mother filed a written response claiming that she did not receive the interim custody order dated March 10, 2011 until March 15, 2011, and that she did not then have adequate transportation to comply with the order. The trial court took Mother's explanation into account, as stated, *supra*. Otherwise, there was no evidence or

---

[1] Father's Exhibit 28.
[2] Quoting *Marian Shop, Inc. v. Baird*, 448 Pa.Super. 52, 670 A.2d 671, 673 (1996) (citing *Fisher v. Pace*, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569 (1949).

2

argument presented suggesting that Mother suffered from some disability or obstacle which caused or contributed to her non-compliance with the orders, resulting in missed visits, interference with visits, failure to complete the mandatory parenting program, and failure to provide notice of medical and therapy appointments. Thus, the trial court was convinced beyond a reasonable doubt, from the totality of the evidence presented, that Mother had the present ability to comply with all of the provisions of the orders in question, had she chosen to do so. Furthermore, the trial court found that Father had met his burden of proof, by a preponderance of the evidence that Mother had failed to comply and had violated the clear provisions of the custody orders and related orders in question.

## Factual History:

1) Contempt Petition filed February 10, 2011:[3]

This petition was filed when A.J.W. was three (3) months old, and accused Mother of being in contempt of the trial court's January 6, 2011 order by interfering with Father's custody at her home, even though that order specifically required that Mother "shall not interfere with [Father's] visitation and shall allow [Father] with private time with child." Mother filed a written response to the petition generally denying all of the allegations in the petition. Following a hearing before the master Dawn Haber, Child Custody Conference Officer, Mother was found in contempt of the order of January 6, 2011.[4] From the testimony presented at the custody trial, the trial court found that Mother did willfully disrupt Father's custody time by interfering and refusing to allow Father reasonable visitation with the Child.[5] Based on its findings, the trial court found Mother in contempt and awarded Father counsel fees in the amount of $1,100.00.

---

[3] Father's Exhibit 20.
[4] ¶ 11 of the Recommended Order dated March 10, 2011.
[5] See ¶s (1), (8), (13) and (16) of the Opinion & Order dated March 25, 2014.

2)  Contempt Petition filed March 24, 2011:[6]

This petition sought a finding of contempt for Mother's failure to comply with the trial

court's March 10, 2011 custody order by continuing to withhold the Child from Father, despite

having been found in contempt and been given the opportunity to purge the contempt by

complying with the then current order.[7] The petition further alleged that Mother refused to allow

Father to have custody time unless he provided all of the transportation for the Child, despite the

clear language of the order which provided that the parties must share transportation.[8]  Father

sought make-up time and an additional $3,395 in counsel fees.

Mother filed a written response to the petition generally denying all of the allegations, but

also claiming that Mother did not receive the order in question until March 15, 2011, and that

Mother did not have adequate transportation to comply with the order.

The trial court refused to enter any finding of contempt regarding the March 15, 2011

order due to the delay in notice. However, the trial court found that Mother continued to be in

contempt of the January 6, 2011 order, and awarded additional counsel fees in the amount of

$1,700. At that point in the proceedings, having handing down the final custody order, the trial

court declined to award any make-up custody time.

3)  Contempt Petition filed November 17, 2011:[9]

This petition asked the trial court to find Mother in contempt for failing to complete the

mandatory parenting program known as the P.A.C.E.[10] program, which Mother became obligated

to do upon her filing of the request for a custody trial de novo, as required by local rule. Mother.

---

[6] Father's Exhibit 21.
[7] See Note 4 above.
[8] ¶ 7 of the Recommended Order dated March 10, 2011.
[9] Father's Exhibit 22.
[10] This is an acronym for the mandatory parenting program for custody litigants then being utilized under Washington County local rule L-1915.4, entitled Parenting And Communicating Effectively, a program offered by Southwest Pennsylvania Human Services, Inc. (the SPHS Care Center), supporting the conflicted family facing divorce, custody and/or separation.

4

filed a written response to this petition generally denying the allegations of contempt, and offering various excuses for her failure to timely complete the program. Father had completed his required sessions of the program by April 13, 2011. Despite several court orders to do so, Mother did not compete her required sessions for the PACE program until September 13, 2013, after two of the five days of the final custody trial were completed. Despite Mother's blatant disregard of the local rule and the trial court's order and her failure to heed her obligation to complete the program in a timely fashion, by that point in the proceedings, the trial court declined to issue any sanction against Mother for her obvious contempt.

4) Contempt Petition filed November 18, 2011:[11]

As set forth, *supra*, this is the first of several contempt petitions brought alleging Mother's contempt of the custody order and seeking sanctions for her failure to consult Father with respect to the Child's medical care and for failing to notify Father of health care appointments or for failing to provide notice until the last minute, so that Father would be unable to attend the Child's appointment. Mother filed a response to this petition, generally denying the allegations and claiming that any instance where Father had been given short notice of the Child's medical appointments was the result of the medical issue involved at the time, and not the result of any willful disobedience of the custody order. In her response, Mother further alleged that Father's petition is "a deliberate attempt to prejudice this Court prior to the *De Novo* hearing."[12]

From the testimony elicited during the five days of custody hearings, and as set forth in these contempt petitions, throughout the history of the case, Mother has engaged in a willful course of conduct designed to restrict Father's access to the Child's health care providers by her unilateral actions with respect to the Child's medical and therapeutic needs. Mother repeatedly

---

[11] This contempt petition contains a notice of presentation for October 6, 2011, a scheduling order for a hearing signed by Judge Melograne on November 17, 2011, but was docketed on November 18, 2011.

[12] Mother's response at ¶ 14.

5

has failed to notify Father of medical and therapeutic appointments made for the Child, or would inform Father within hours of the appointment so that his ability to attend would be impaired. This is a running theme throughout the testimony of the trial *de novo* and throughout these petitions. As the trial court noted subsequent to the Final Custody order, following the two days of hearings on Father's petition for special relief, November 21st and December 19th of 2014, Mother continues to refuse to accept the reports of medical providers that the Child is not autistic or developmentally delayed, and continues to assert to his pre-school administrators, teachers and others that the Child is so. The trial court found Mother's behavior in this regard to be irrational and detrimental to the welfare of the Child. The trial court further found that Mother's behavior regarding scheduling appointments and attempting to convince health care professionals and others that the Child is autistic or developmentally challenged is an element of her course of conduct designed to impair Father's custody rights and to circumvent the Child's progress in his preschool, which Father selected and to which Mother objects.

Based on the foregoing, the trial court found Mother in willful contempt of the custody order and awarded counsel fees to Father in the amount of $660.00 with respect to this petition, as requested.

5) Contempt Petition filed February 2, 2012:[13]

In this petition Father asked the trial court to sanction Mother for scheduling medical appointments for the Child on December 23, 2011, January 19, 2012, and January 24, 2012 without adequate notice or without any notice to Father as required under the custody order of March 10, 2011, paragraph 8. During the appointment on December 23, 2011, Mother informed the doctor that the Child is experiencing developmental delays, and requested that the Child be assessed for these issues, over Father's objection. Mother filed a response to this petition

---

[13] Father's Exhibit 27.

6

generally denying the allegations. Based on the pleadings, and the testimony elicited during the five days of custody hearings, the trial court found Mother in contempt of paragraph 8 of the March 10, 2011 custody order by willfully failing to comply with the requirement that she consult with Father regarding the medical care of the Child, and by failing to provide adequate notice to Father of appointments she scheduled so that both parents could attend.

The trial court found Mother in contempt of the order and awarded counsel fees to Father in the amount of $1,000.00 with respect to this petition.

6) Contempt Petition filed March 1, 2012:[14]

In this petition Father asked for sanctions for Mother's failure to notify him of an appointment at the Children's Hospital Development Unit on February 13, 2012, as both parties are required to do under the March 10, 2011 custody order, paragraph 8. Mother filed an answer to the petition stating general denials to the allegations. Although the order in question required that "the parent scheduling medical appointments shall notify the other on the date the appointment is made and shall attempt to schedule the appointment so that both parents can attend," and although this requirement was reiterated by the trial court in its order of February 2, 2012, it is clear that Mother did neither. As noted above, Mother's failure to notify Father of medical and therapy appointments she had made for the Child was a running theme throughout the testimony of the custody trial *de novo*.

On these facts, the trial court found Mother in contempt of the order and awarded counsel fees to Father in the amount of $1,000.00 with respect to this petition.

7) Second Contempt Petition filed March 1, 2012:[15]

In this petition Father alleged that Mother enrolled the Child in "speech classes" without consulting Father and without allowing Father to participate in the decision or in the therapy.

---

[14] Father's Exhibit 23.
[15] Father's Exhibit 24.

7

Mother responded in writing by stating general denials to the allegations. As stated previously, although the custody order in effect at that time required that "the parent scheduling medical appointments shall notify the other on the date the appointment is made and shall attempt to schedule the appointment so that both parents can attend," it is clear from the pleadings and the testimony heard by the trial court that Mother did neither. Again, as noted above, Mother's unilateral actions with respect to the Child's medical and therapeutic treatment and her failure to notify Father of appointments made were a running theme throughout the testimony of the trial *de novo*.

Again, based on the pleadings and the testimony, the trial court found Mother in willful contempt of the order and awarded counsel fees to Father in the amount of $1,000.00 with respect to this petition.

8) Contempt Petition filed April 18, 2012:[16]

In this petition Father sought reasonable counsel fees for Mother's contempt of the custody order dated March 10, 2011, and the two more recent court orders of March 1, 2012 by continuing to act unilaterally with respect to the Child's medical and therapy appointments, by failing to provide adequate notice to Father of the appointments made, by scheduling medical and therapy appointments during Father's custody time or demanding make-up time for appointments she scheduled during her own custody time, and for engaging in "absurd, harmful, bizarre, obdurate, and vexatious conduct."[17] As a result of Mother's obdurate and vexatious behavior and her irrational interpretation of the court orders, the petition further sought clarification of the order in an effort to curtail the conflict going forward. Mother filed a written response to the petition on April 14, 2014, which stated only general denials to the allegations set forth in the petition.

---

[16] Father's Exhibit 25.
[17] Id. at ¶ 53.

8

Based on the testimony elicited during the five days of custody hearings and on the pleadings, including the exhibits attached to Father's petition, the trial court found Mother in contempt of the orders of March 10, 2011, and two dated March 1, 2012, and awarded counsel fees to Father in the amount of $2,000.00 with respect to this petition.

9) Contempt Petition filed December 3, 2013:[18]

In this petition Father sought an award of counsel fees due to Mother's contempt of the order of court dated April 15, 2013, by attempting to subject the Child to lab work recommended by a Dr. Faber for treatment of autism. Despite the clear provision of the court order, and despite assurances from other medical professionals that the Child is not developmentally delayed, or at best, is no longer developmentally delayed, Mother attempted to subject the Child to these lab tests on October 31, 2013, and on November 4, 2013, as documented in the exhibits to the petition. Mother also engaged in other inappropriate behavior contrary to the Child's best interests, as documented in the exhibits to the petition, including an incident at Washington Hospital. Mother brought the Child to emergency room at Washington Hospital alleging that he was not breathing and unresponsive (which was not accurate), but refused to bring the Child into the exam room and made multiple requests for additional testing.

Mother filed a response to the petition, generally denying the allegations and accusing Father of hindering the medical evaluations of the Child by not cooperating and by threatening the health care professionals with legal action.

As noted by the trial court in its factual findings of the Custody Order dated March 25, 2014, Mother continues to claim that the Child has special needs, particularly "autistic features," and that the Child has developmental delays, although the medical evidence shows the

---

[18] Father's Exhibit 26.

9

contrary.[19] The trial court noted this again after hearings conducted on November 21st and December 19th of 2014, scheduled on Father's Motion for special relief. In its order granting special relief dated December 19, 2014, filed on December 24, 2014, the trial found that Mother was not acting in the Child's best interests by refusing to accept the reports of medical providers that the Child is not autistic or developmentally delayed, but continuing to assert to his pre-school administrators, teachers and others that he is so.[20] The order entered December 24, 2014 also ordered Mother to cease and desist from telling anyone that the Child is autistic or developmentally delayed. The trial court further found that Mother's irrational behavior in this regard is detrimental to the welfare of the Child. In addition, based on the testimony of the Child's pediatrician, Dr. Foley, the trial court found that Mother's behavior interferes with the Child's health care, particularly her inaccurate reporting of the Child's behaviors and symptoms. Although some of this testimony was heard subsequent to the custody trial and the contempt petitions which are currently before the Court, this evidence confirms Mother's steadfast refusal to abide by the trial court's orders and to act in the Child's best interests.

Based on the foregoing, including the exhibits attached to Father's petition, the trial court found Mother in willful contempt of the order dated April 15, 2013, and awarded counsel fees to Father in the amount of $2,500.00 with respect to this petition.

## Legal Analysis:

The award of attorney's fees is a proper exercise of the trial court's civil contempt power. "Because an award of counsel fees is 'intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent,' it is 'coercive and compensatory, and not punitive.'" *Luminella v. Marcocci*, 814 A.2d 711, 719 (Pa.Super. 2002).

---

[19] Opinion & Order dated March 25, 2014, ¶ 10.

[20] Mother filed an appeal of this order to the Superior Court, docketed at number 170 WDA 2015. By order dated October 29, 2015, the Superior Court affirmed the trial court's order. On November 30, 2015, Mother filed a Petition for Allowance of appeal to the Supreme Court of Pennsylvania which is pending at docket number 465 WAL 2015.

10

While the amount of attorneys' fees awarded by the trial court herein may seem merely a token amount in light of the extensive fees expended by Father over the course of this litigation, and undoubtedly similar fees spent by Mother, the trial court found it important to issue these sanctions against Mother, to partially compensate Father for expenses made necessary by her conduct and to coerce her to comply with the court's orders hereafter. As stated, there was no question that Mother was not compliant with the trial court's orders. Clearly, the record supported the trial court's finding that Father had met his burden of proof, by a preponderance of the evidence, that Mother had failed to comply and has violated the clear provisions of the custody orders and related orders in question.

Furthermore, Mother did not aver that she unable to comply with the trial courts orders, except with respect to Father's contempt petition filed March 24, 2011, where she claimed that she did not receive the order timely and that she did not then have adequate transportation to comply with the order, as noted above. Other than this instance, there was no reason offered to explain Mother's refusal to abide by the orders, and the trial court found that the totality of the evidence presented established, beyond a reasonable doubt, that Mother had the present ability to comply with all of the provisions of the orders in question, had she chosen to do so. Under the circumstances, the trial court was compelled to find contempt and to award counsel fees.

> A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to be found in civil contempt. The complaining party has the burden of proving by a preponderance of the evidence that a party violated a court order . . . . To impose civil contempt the trial court must be convinced beyond a reasonable doubt from the totality of the evidence presented that the contemnor has the present ability to comply with the order.

*Garr v. Peters, supra,* 773 A.2d at 189 (Pa.Super. 2001), citing *Sinaiko v. Sinaiko,* 664 A.2d 1005, 1009-10 (Pa.Super. 1995).

Based on the foregoing, the trial court respectfully submits that the order appealed from dated June 25, 2015, be affirmed, and that the appeal be dismissed.

BY THE COURT:

_____1 | 6 | 2016_____　　　　　_____, J.
Date　　　　　　　　　　　　　　John F. DiSalle

12