J-S79020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: K.J.K., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.K., FATHER | : : : : : : | |
| | : | No. 1390 MDA 2018 |

Appeal from the Decree Entered July 26, 2018
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
85249

BEFORE: SHOGAN, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.: **FILED JANUARY 23, 2019**

M.K. ("Father") appeals from the decree dated July 23, 2018 and entered July 26, 2018, granting the second petition filed by T.W. ("Stepfather") seeking to involuntarily terminate Father's parental rights to his minor child, K.J.K., a female born in January of 2008, ("Child"), with T.J.W. ("Mother"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1) and (b). We affirm.

This matter was previously before our Court on review of the trial court's order, entered July 12, 2017, denying Stepfather's first petition to terminate, involuntarily, Father's parental rights to Child. Herein, we adopt the factual background and procedural history of this appeal as set forth in our Memorandum entered on April 18, 2018. *See In re: K.J.K., a Minor, Appeal of: T.W.*, 1260 MDA 2017 (Pa. Super. 2017), at 1-5.

On December 15, 2017, while Stepfather's appeal from the order denying his first petition to terminate Father's parental rights was pending, Stepfather filed his second petition to terminate Father's parental rights. After we affirmed the denial of Stepfather's first petition on April 18, 2018, the trial court held an evidentiary hearing on his second termination petition on July 16, 2018. Mother was present at the hearing and testified. Stepfather was also present with his counsel, Attorney Jeffrey R. Boyd, and testified. Child was present with her counsel, Attorney Melissa A. Krishock, and her court-appointed guardian *ad litem* ("GAL"), Attorney Jill M. Scheidt. Child testified as to her preferred outcome, which is termination of Father's parental rights and adoption by Stepfather. [1]

_____

[1] In ***In re Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017) (plurality), our Supreme Court held that 23 Pa.C.S. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding. The Court defined a child's legal interest as synonymous with his or her preferred outcome. In ***In re T.S.***, 192 A.3d 1080 (Pa. 2018) (filed August 22, 2018), the Supreme Court held that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding because, at two and three years old, they were incapable of expressing their preferred outcome. The Court explained, "if the preferred outcome of the child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act that counsel be appointed 'to represent the child,' 23 Pa.C.S. § 2313(a), is satisfied where the court has appointed an attorney-[GAL] who represents the child's best interests during such proceedings." ***In re T.S.***, 192 A.3d at 1092-1093. Here, ten-year-old Child had both a legal counsel and a GAL, and her preferred outcome is part of the record, so the mandates of ***L.B.M.*** and ***T.S.*** are satisfied as to the ascertainment of the child's preferred outcome.

Father was present with his counsel, Attorney Gary S. Fronheiser, and he testified. The trial court admitted the report and testimony of the GAL. The trial court also admitted the report of Larry A. Rotenberg, M.D., DLFAPA (Distinguished Life Fellow of the American Psychiatric Association), who, pursuant to court order, completed a psychiatric evaluation of Father, Mother, Stepfather, and Child, and conducted a bonding evaluation. The trial court also admitted the supervised visitation reports (authored by visitation supervisor, Thomas Givler, of A New Dawn) for three visits between Father and Child.[2] The trial court also admitted, as Exhibit No. 4, letters authored by Child and given to Father at one of the visits. The letters stated that Child hates Father. In its opinion entered on October 11, 2018, the trial court set forth the testimony and documentary evidence that it found credible. *See* Trial Court Opinion, 10/11/18, at 1-9.

On July 26, 2018, the trial court entered a decree terminating Father's parental rights. On August 16, 2018, Father timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In his brief on appeal, Father raises the following issues:

1. Did the [trial] court err by terminating [Father's] parental rights?

2. [Did the petitioner's present sufficient evidence to support termination of Father's parental rights]?

---

[2] The trial court originally ordered four supervised visits.

- 3 -

3. Was the evidence presented insufficient to show that [Father,] by conduct continuing for a period of at least six months immediately preceding the filing of the petition[,] had either shown a settled purpose of relinquishing parental claim to the child or refused or failed to perform parental duties as required by 23 Pa.C.S. Section 2511(a)(1), the only ground for termination alleged by petitioner[]?

4. Was the evidence insufficient for the [trial] court to make a determination under 23 Pa.C.S. Section 2511(b)?

5. Did the [trial] court err because it denied [Father's] request to continue the hearing scheduled for July 16, 2018 because [Father's] only witness, Thomas Givler of A New Dawn, was not [available] on that date?

6. Did the [trial] court err by violating its own order dated June 29, 2018 wherein the [trial] court stated it would schedule another date to hear the testimony of Thomas Givler of A New Dawn, but the [trial court] later refused to schedule a further hearing, thereby denying [Father's] rights to present his only witness?

Father's Brief, at 1-2.[3]

Father argues that there was insufficient evidence presented at the termination hearing to show that the requirements of section 2511(a)(1) were met by clear and convincing proof. Father asserts that, although he was incarcerated after the evidentiary hearing on Stepfather's first termination petition on June 14, 2017, he was in drug rehabilitation by October of 2017. Father's Brief at 5. Father states that, since his release from incarceration in May 2018, he has continued his rehabilitation with outpatient services, and is now "clean" of drugs. *Id.* Father stresses that the trial court, in its December

_____

[3] While Father stated his issues somewhat differently in his concise statement, we find them sufficiently preserved for this Court's review.

- 4 -

5, 2017 opinion denying Stepfather's first petition, cited Father's rehabilitation efforts as its primary reason for rejecting Stepfather's first petition. Father also states that he paid his child support arrearages while incarcerated and since his release. Father notes that he sent letters to Child while incarcerated and that he participated in three court-ordered supervised visits with Child after his release from prison. *Id.* at 6. Accordingly, Father contends that the trial court abused its discretion in concluding that he evidenced a settled purpose to relinquish his parental rights.

Regarding section 2511(b), Father states that, at the hearing on July 16, 2018, Stepfather proffered evidence showing that termination of Father's parental rights would be in the best interests of Child because Stepfather and Mother have a great family life, whereas Father was recently released from prison. Father complains that Stepfather failed to present sufficient evidence relating to the bond between Child and him, and the effect on Child of permanently severing that bond. *Id.*

Finally, Father argues that the trial court erred in denying his request to present his only witness, Thomas Givler of A New Dawn, who supervised visits ordered by the trial court in its April 18, 2018 order. Father complains that the trial court, in a June 29, 2018 order that denied Father's motion to continue the July 16, 2018 termination hearing, initially agreed to schedule a hearing to accept Mr. Givler's testimony. At the hearing on July 16, 2018, however, the court refused to schedule a further hearing because the visits Mr. Givler supervised occurred after Stepfather filed the second termination

petition. Father contends that the trial court's refusal to allow Mr. Givler to testify is contrary to prior decisions directing trial courts to consider the totality of the circumstances, and not just the six months preceding the filing of the termination petition. Moreover, Father argues that the trial court's ruling deprived him of due process of law since he relied on the trial court in planning the presentation of his case. Father's Brief at 6-7, 23. Father claims that Mr. Givler's testimony would have supported Father's position, as it "would have been a more complete picture of the interaction and relationship between [Child] and her father from an unbiased observer," such that the denial of an opportunity to present the witness prejudiced his case. *Id.* 22-26.

First, we will review Father's first, second, third, and fourth issues regarding whether the trial court erred and/or abused its discretion in terminating his parental rights to Child under section 2511(a)(1) and (b). In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a

> decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **Id.**
>
> As we discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. **R.J.T.**, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. **In re Adoption of Atencio**, 650 A.2d 1064, 1066 (Pa. 1994).

**In re Adoption of S.P.**, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, as we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" **Id.**, quoting **In re J.L.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we

focus upon sections 2511(a)(1) and (b).  Section 2511 provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

A petitioner seeking termination of parental rights under Section 2511(a)(1) must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrated a settled purpose to relinquish parental rights or that the parent refused or failed to perform parental duties.  ***In Re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to subsection 2511(a)(1), our Supreme Court has held:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988). Further,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

In *Adoption of S.P.*, our Supreme Court reiterated the standard with which a parent must comply in order to avoid a finding that he abandoned his child.

> Applying [*In re Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975)] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." [*McCray*] at 655.
> * * *

Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*Adoption of S.P.*, 47 A.3d at 828, *quoting* **In re: Adoption of McCray**, 331 A.2d at 655 (footnotes and internal quotation marks omitted). Also in **Adoption of S.P.**, our Supreme Court re-visited its decision in **In re R.I.S.** and stated:

[W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See e.g. Adoption of J.J.*, 515 A.2d [883, 891 (Pa. 1986)] ("A parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re:*] *E.A.P.*, 944 A.2d [79,] 85 [(Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 47 A.3d at 830–831.

As the Supreme Court definitively ruled in ***Adoption of S.P.***, the trial court may examine the effect of a parent's incarceration in ruling on a termination petition.[4]

This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). ***See In re Adoption of C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993), our Supreme Court] held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re: T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding

---

[4] Although ***In re Adoption of S.P.*** concerned section 2511(a)(2), the Supreme Court's reliance upon ***McCray***, a case which involved the precursor to section 2511(a)(1), makes clear that the discussion in ***S.P.*** about the impact of incarceration upon a litigant's capacity to parent is equally applicable to section 2511(a)(1).

evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a

permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

After a careful review of the record, this Court finds the trial court's decision to terminate the parental rights of Father under section 2511(a)(1) and (b) is supported by competent, clear and convincing evidence in the record. ***In re Adoption of S.P.***, 47 A.3d at 826-827. We adopt the trial court's discussion set forth in its opinion with regard to section 2511(a)(1) and (b), as its credibility and weight determinations are supported by the evidence in the record. ***See*** Trial Court Opinion, 10/11/18, at 10-11. Because of his addiction to drugs, Father has been in and out of prison throughout Child's ten-year life. Thus, in view of its impact on Father's capacity to parent, Father's incarceration rightly played a significant role in the trial court's consideration of the evidence offered in support of the termination of Father's parental rights. In addition, the trial court correctly determined that Child's needs and welfare, as well as her safety needs, have never been met by Father, but, rather, by Mother and Stepfather. The trial court also appropriately considered the report of Dr. Rotenburg, and that Child, herself, stated that she has no bond with Father, nor does she desire to have one, and that her preferred outcome is to be adopted by Stepfather. ***In re T.S.M.***, 71 A.3d at 267; ***In re K.Z.S.***, 946 A.2d at 763. Further, although Father claims that he loves Child, this Court has held that a parent's love of his child, alone, does not preclude a termination. ***See In re L.M.***, 923 A.2d 505, 512 (Pa. Super. 2007) (stating that a parent's own feelings of love and affection for a

child, alone, will not preclude termination of parental rights). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007, *citing In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.").

With regard to Father's fifth and sixth issues regarding the trial court's refusal to continue the evidentiary hearing so that Father could present the testimony of Mr. Givler, we note the standard of review of a trial court's admission or exclusion of evidence is well-established and very narrow:

> These matters are within the sound discretion of the trial court, and we may reverse only upon a showing of abuse of discretion or error of law. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, [t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Jacobs v. Chatwani*, 922 A.2d 950, 960 (Pa. Super. 2007), *appeal denied*, 938 A.2d 1053 (Pa. 2007).

Moreover, "[p]rocedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Garr v. Peters*, 773 A.2d 183, 191 (Pa. Super. 2001) (internal quotation marks and citations omitted). "Due process is flexible and calls for such procedural protections as

the situation demands." ***In re Adoption of Dale A., II***, 683 A.2d 297, 300 (Pa. Super. 1996), *citing* ***Mathews v. Eldridge***, 424 U.S. 319, 334, (1976).

Here, for the reasons expressed by the trial court, we find no deprivation of Father's guarantee to due process of law, nor any prejudice to Father's case from the refusal of the trial court to continue the hearing to allow Father to present the testimony of Mr. Givler. ***See*** Trial Court Opinion, 10/11/18, at 12-13. As noted by the trial court, Mr. Givler's testimony would have been consistent with his reports, which described appropriate interaction between Father and Child during the supervised visits. Nevertheless, the court found that Mr. Givler's reported observations did not establish a meaningful, supportive, nurturing, and beneficial parental bond between Father and Child, even if viewed in the light most favorable to Father. In sum, the trial court did not abuse its discretion since Mr. Givler's testimony would not have established a parental bond worth preserving in this case.

Accordingly, we find no error and/or abuse of discretion in the trial court's decree terminating Father's parental rights to Child pursuant to sections 2511(a)(1) and (b), or in its refusal to continue the hearing so Father could present the testimony of Mr. Givler.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/23/2019