J-S25013-20
J-S25014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.D., P/K/A J.G. | : | |
| | : | |
| Appellant | : | No. 296 MDA 2020 |

Appeal from the Order Entered January 24, 2020
In the Court of Common Pleas of York County Civil Division at No(s):
2018-FC-183-03

\*\*\*\*\*

| | | |
|---|---|---|
| T.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.D. | : | |
| | : | |
| Appellant | : | No. 297 MDA 2020 |

Appeal from the Order Entered January 24, 2020
In the Court of Common Pleas of York County Civil Division at No(s):
2018-FC-183-03

BEFORE:  LAZARUS, J., DUBOW, J., and KING, J.

MEMORANDUM BY LAZARUS, J.:                **FILED JULY 27, 2020**

J.D., p/k/a J.G., (Mother) appeals from the order, entered in the Court of Common Pleas of York County, denying her petition for relocation and granting T.A. (Father) primary custody of the parties' child, C.A. (born

3/2015). Mother also appeals from the order finding her in contempt.[1] After our review, we affirm.

Mother and Father resided in York, Pennsylvania, when C.A. was born. The parties ended their relationship in December 2017. On February 26, 2018, the parties entered into a stipulated custody agreement, which provided for shared legal and physical custody of C.A.

In July 2018, Mother married and moved to Danville, Pennsylvania, to reside with her new husband. N.T. Custody, Contempt and Relocation Hearing, 1/19/2020, at 35. In April 2019, Mother and her husband moved to Bloomsburg, Pennsylvania.[2] *Id.* Mother did not provide statutory notice of relocation to Father prior to either of these moves. *Id.* at 41. *See* 23 Pa.C.S. § 5337(c) (outlining notice requirements for relocation in child custody matters).

On September 4, 2019, Father filed a petition for special relief, raising the issue of Mother's relocation and seeking relief due to Mother's violation of the parties' custody agreement. The court held a hearing on this petition on October 18, 2019, after which the court entered an order continuing the

---

[1] Mother filed two notices of appeal from the same order and same family court docket number, one from the custody determination and one from the contempt determination. These consecutively listed appeals involve identical parties and they emerged from the same hearing. Thus, we have consolidated the cases *sua sponte* for ease of disposition. *See* Pa.R.A.P. 513.

[2] Both Bloomsburg and Danville are approximately a two-hour drive from York.

matter, setting a new custody schedule, and requiring Father's custody be supervised.[3]

On December 5, 2019 and January 22, 2020, the court held hearings on Father's petition for contempt and Mother's petition for relocation. Mother and Father both testified, as did Mother's husband, Mother's mother-in-law, Father's mother, CYF caseworker Kala Ciletti, and Detective John Bumsted, who investigated the abuse report with respect to C.A.'s broken collarbone. *See* n.3, *supra*.

On January 24, 2020, after considering the testimony and statutory custody and relocation factors, *see* 23 Pa.C.S.A. §§ 5238, 5337, the court entered an order awarding Mother and Father shared legal custody, awarding Father primary physical custody and Mother partial physical custody during the school year, and awarding the parties shared physical custody during the

_____

[3] C.A. suffered a broken collarbone while in Father's custody, apparently from falling out of bed. Additionally, York County Children, Youth and Families (CYF) received a referral regarding "pornographic pictures that supposedly may have been taken by an eight-year-old half[-]sibling and that the caseworker talked to [F]ather about the photos and appropriate supervision for C.A. and her being able to access an iPad that had those on [it]." N.T. Custody, Contempt and Relocation Hearing, 1/22/20, at 9-17. A Childline report of abuse was determined to be unfounded. *Id.* at 17. *See also* N.T. Contempt and Relocation Hearing, 12/5/19, at 17. In fact, Mother testified Father had told her about the pictures he had found. N.T. Custody, Contempt and Relocation Hearing, 1/22/20, *supra* at 44. The trial court, noting on the record that there was no medical evidence suggesting abuse, *id.* at 9, stated: "I am finding as a matter of fact that there was no harm by [F]ather whatsoever relative to the collarbone or to any pictures that may have been taken by the eight-year-old[,] so those simply are not issues anymore." *Id.* at 53.

summer (two weeks with Mother and one week with Father, throughout the summer). The court denied Mother's petition for relocation and required the parties to engage in co-parenting counseling. The court also found Mother in contempt and ordered her to pay $500 toward Father's attorneys' fees and the first $1,000 toward the cost of co-parenting counseling.

On February 13, 2020, Mother filed two notices of appeal, one from the contempt order and one from the custody order. Both Mother and the trial court have complied with Pa.R.A.P. 1925. Mother raises the following issues for our review:

1. Did the trial court err by considering relocation despite the fact that it was undisputed that Mother moved in July 2018, and the parties had discussed the move and modified the custody schedule at that time due to the move?

2. Did the trial court abuse its discretion in determining a drastic change in custody following the court's own position and order after the first half-day of trial?

3. Did the trial court err by considering various facts that were either inaccurate or not supported by the testimony?

Appellant's Brief, at 4.

In her first issue, Mother claims the court erred in considering the relocation issue because Father was aware of Mother's move and she believed they "had reached an agreement." Appellant's Brief, at 20. She argues that Father's failure to object rendered the relocation issue moot. Mother refers to the trial court's statement in its order, which reads:

The [c]ourt was very candid in saying at first [it] was inclined to perhaps approve [M]other's relocation because a year and two

- 4 -

months went by that [F]ather did not protest the relocation, and, therefore, the [c]ourt at the beginning of this case surmised that [F]ather had slept on his rights to do so. However, the [c]ourt heard credible testimony from [F]ather that [M]other did not always keep him apprised of where she resided until sometime in 2019. I don't recall the exact month, but sometime in the year 2019 [F]ather still assumed [M]other lived in Lancaster. Father's reasons and motivations for opposing a relocation we find to be good. Mother's reasons and motivations for seeking the relocation benefits her, but not [C.A.]. And, also, she moved without getting permission. All of that weighs against the relocation.

Order, 1/14/2020, at 10.

Section 5337(c) of the Custody Act, which addresses the notice the party proposing relocation must provide to the non-relocating party, states, in pertinent part, as follows:

(1) The party proposing the relocation **shall** notify every other individual who has custody rights to the child.

(2) Notice, sent by certified mail, return receipt requested, shall be given no later than:

(i) the 60th day before the date of the proposed relocation; or

(ii) the tenth day after the date that the individual knows of the relocation, if:

(A) the individual did not know and could not reasonably have known of the relocation in sufficient time to comply with the 60–day notice; and

(B) it is not reasonably possible to delay the date of relocation so as to comply with the 60–day notice.

23 Pa.C.S.A. § 5337(c) (emphasis added). Here, Mother did not file a notice of relocation before she moved to Danville or before she moved to Bloomsburg. Mother testified that she moved to Danville on July 19, 2018,

and "mentioned" her move to Father at "the beginning of July 2018." N.T. Contempt and Relocation Hearing, 12/5/19, at 59. Thus, Mother complied with neither the form nor the time requirement for notice of relocation as set forth in section 5337(c). Mother acknowledged that the custody order contained two pages of provisions with respect to relocation requirements, and she realized that she had misinterpreted the provisions, stating, "I realize that, now, looking back on it, I had to [provide notice] either way." **_Id._**

The language in section 5337 is mandatory; it provides no exception for a claim that the party entitled to notice was "aware of" or had "agreed to" the move. Further, since Mother did not provide notice, Father was not provided with a counter-affidavit for objection to the proposed relocation.[4] Mother acknowledged that Father was unaware of her second move, from Danville to Bloomsburg, until "after the fact." N.T. Contempt and Relocation Hearing, 12/5/19, at 111. Finally, Mother has acknowledged the mandatory statutory notice requirement, but in arguing that the trial court erred in considering relocation, she continues to press this issue on appeal. We find no error. The trial court properly considered the statutory relocation factors, as well as the

---

[4] Section 5337(c)(3)(x) provides: "Except as provided by section 5336 (relating to access to records and information), the following information, if available, **must** be included with the notice of the proposed relocation: [] A counter-affidavit as provided under subsection (d)(1) which can be used to object to the proposed relocation and the modification of a custody order." 23 Pa.C.S.A. § 5337(c)(3)(x). If the non-relocating party does not file a counter-affidavit to object to the proposed relocation within thirty (30) days after receipt of notice, the non-relocating party will be foreclosed from objecting the relocation. 23 Pa.C.S.A. § 5337(c)(3)(xi). Here, the court noted Father had not "slept on his rights" since he was never given the proper notice.

statutory custody factors, in reaching its custody decision. *See S.S. v. K.F.*,

189 A.3d 1093 (Pa. Super. 2018); *A.M.S. v. M.R.C.*, 70 A.3d 830 (Pa. Super.

2013).

Next, Mother argues the custody order was an abuse of discretion.

Specifically, Mother contends that the order was a "drastic change in custody

following the court's own position and order after the first half-day of trial."

Appellant's Brief, at 23. This claim is meritless.

Our standard of review in child custody cases is as follows:

> In reviewing a custody order, our scope is of the broadest type
> and our standard is abuse of discretion. We must accept findings
> of the trial court that are supported by competent evidence of
> record, as our role does not include making independent factual
> determinations. In addition, with regard to issues of credibility
> and weight of the evidence, we must defer to the presiding trial
> judge who viewed and assessed the witnesses first-hand.
> However, we are not bound by the trial court's deductions or
> inferences from its factual findings. Ultimately, the test is whether
> the trial court's conclusions are unreasonable as shown by the
> evidence of record. We may reject the conclusions of the trial
> court only if they involve an error of law, or are unreasonable in
> light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

Furthermore, we are guided by the following principles:

> We have stated that the discretion that a trial court employs in
> custody matters should be accorded the utmost respect, given the
> special nature of the proceeding and the lasting impact the result
> will have on the lives of the parties concerned. Indeed, the
> knowledge gained by a trial court in observing witnesses in a
> custody proceeding cannot adequately be imparted to an appellate
> court by a printed record.
>
> The primary concern in any custody case is the best interests of
> the child. The best-interests standard, decided on a case-by-case

basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing.

We must accept the trial court's findings that are supported by competent evidence of record, and we defer to the trial court on issues of credibility and weight of the evidence.

*R.L.P. v. R.F.M.*, 110 A.3d 201, 207-208 (Pa. Super. 2015) (quotations and citations omitted).

After the first day of trial, the court entered an order **maintaining the status quo pending the completion of trial**. At that point, the court had not heard all the witnesses; in particular, the court had not heard the testimony of Detective John Bumsted, who investigated the abuse report, and who had been contacted by Mother's new husband's mother.[5]

Detective Bumsted testified as follows:

I was informed that Children, Youth & Families was involved. . . . The allegation was that the victim child had a broken collarbone, or there was an injury to the collarbone. There was also an allegation that there were some type of photos on an iPad or something of some sort. . . . Regarding the broken collarbone I reached out to – at that time the child was living with [M]other in the Bloomsburg area, so I contacted the children's advocacy center [CAC] in that region. I scheduled an interview through the Bloomsburg Police Department. The child was interviewed up there. Then I received a recorded interview of that. . . . [T]he written report that I received from the CAC, was that there was no disclosure of abuse. . . . [I] followed up, I requested the medical records from the child's visit to OSS, I believe. Doctor

---

[5] Detective Bumsted did not know at the time of the investigation that this concern about the unfounded determination was from Mother's new husband's mother. **See** N.T. Custody, Contempt and Relocation Hearing, 1/22/20, at 9 ("Q: And did you know that was the new mother-in-law? A: At that time, no."). Notably, the new mother-in-law's report to Detective Bumsted stated, in an email: "I am writing this email to make you aware I am very concerned regarding the unfounded result of your investigation of [Father]." **Id.** at 11.

> Bixler was the physician.  I then placed a phone call to him. . . .
> I had a brief conversation with Doctor Bixler regarding the injuries.
> I asked him if he suspected any abuse.  He stated no.  . . .  After
> discussing this case and this matter with the district attorney's
> office in York County the decision was made to make the case
> unfounded and inactive.  I explained [this] to [M]other.  I
> explained to [the mother-in-law] that the case is inactive at this
> time[.]  It lacked sufficient evidence to proceed criminally.

N.T. Custody, Contempt and Relocation Hearing, 1/22/20, at 4-8, 15.  The

court also confirmed that Dr. Bixler's medical records had been submitted at

the prior hearing.  *Id.* at 8.

Here, following the two-day hearing, the trial court set forth a full and

contemporaneous analysis of each of the section 5337 relocation factors and

each of the section 5328 custody factors, including discussion of the credible

evidence introduced by the parties and articulation of its reasons for deciding

if a factor favored Mother or Father, or if it was neutral and favored neither

party.  *See* Trial Court Opinion, 3/13/20, at 3-11.  *See also* 23 Pa.C.S.A. §

5323(d) (court shall delineate reasons for decision on record in open court or

in written opinion or order).  Mother's argument, that the court's order is an

abuse of discretion because it varied considerably from the order maintaining

the status quo pending the second day of trial, suggests that the court should

have ignored the full record.  This claim is baseless.  The court found Father's

testimony credible, and after weighing the various factors, the court entered

an order it believed was in C.A.'s best interests.  The court's determination is

supported by competent evidence of record.  *R.L.P.*, *supra*.  We find no error

or abuse of discretion.  *V.B.*, *supra*.

In her appeal from the contempt order, Mother raises one issue: "Whether the trial court erred and/or abused its discretion by finding Mother in contempt despite the fact that no evidence of intent to violate the order was presented." Appellant's Brief, at 4.

As with child custody orders in general, we review a custody contempt order pursuant to an abuse of discretion standard of review. **Garr v. Peters**, 773 A.2d 183, 189 (Pa. Super. 2001). To support a finding of civil contempt, the trial court must determine "(1) that the contemnor had notice of the specific order or decree which she is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Harcar v. Harcar**, 982 A.2d 1230, 1235 (Pa. Super. 2009). **See** 23 Pa.C.S.A. § 5323(g).[6]

Mother argues there was no evidence of intent to support the court's finding of contempt. In her testimony, Mother acknowledged that she

---

[6] Section 5323(g) provides:

(g) Contempt for noncompliance with any custody order.—

    (1)    A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

* * * *

    (v) Counsel fees and costs.

23 Pa.C.S.A. § 5323(g)(1)(v).

neglected to inform Father that C.A. was attending counseling, that she had enrolled C.A. in a Head Start program in the Bloomsburg area, and that she had enrolled C.A. in speech therapy. N.T. Custody, Contempt and Relocation Hearing, 1/22/20, at 41-42; N.T. Contempt and Relocation Hearing, 12/5/19, at 78. The court found Mother in contempt of the parties' February 26, 2018 stipulated custody agreement to share legal custody of C.A., and stated the following on the record:

> [W]e find [M]other in contempt on three counts. The first count of [M]other's contempt is her entering [C.A.] into counseling without notifying [F]ather. The second count is [M]other enrolling [C.A.] in [H]ead [S]tart without notifying [F]ather. The third count is [M]other entering the [C.A.] into speech therapy without notifying [F]ather.

N.T. Custody, Contempt and Relocation Hearing, 1/22/20, at 107.[7]

As detailed above, the record supports the trial court's findings of contempt. It is undisputed that Mother was subject to the stipulated custody order and was aware that it specified that she and Father shared legal custody. **See** 23 Pa.C.S.A. § 5322(a) (defining "Legal custody" as "the right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions."). As such, Mother was required to inform

---

[7] In its Rule 1925(a) opinion, the trial court misunderstood Mother's claim in her Rule 1925(b) statement of errors complained of on appeal, and responded to this claim in terms of Mother's failure to comply with relocation notice requirements. Mother's Rule 1925(b) did not specify whether her claim referred to custody or relocation. Nonetheless, and as noted above, the court specifically determined on the record that Mother was in contempt of the custody order.

Father about enrolling C.A. in counseling, speech therapy, and the Head Start program, and yet she proceeded to make unilateral decisions affecting C.A.'s education and welfare. Mother's intent can be inferred from her actions. The record supports the court's finding of contempt. We find no abuse of discretion. **_Garr_**, **_supra_**.

Based on the foregoing, we conclude the trial court did not commit an error of law or an abuse of discretion. Therefore, we affirm the court's January 24, 2020 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/27/2020