Jeanette GARR, Appellant,

v.

Michael A. PETERS, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 10, 2001.

Filed April 10, 2001.

Margaret T. Lucas, Sharon, for appellee.

Before FORD ELLIOTT, MUSMANNO, and KELLY, JJ.

KELLY, J.:

¶ 1 In this appeal, we must determine whether the trial court erred: when it heard the motion for custody modification of Appellee, Michael A. Peters ("Father"), absent a demonstration of changed circumstances; when it transformed a custody hearing into a contempt hearing thereby preventing Appellant, Jeanette Garr ("Mother"), from presenting her case as to the modification of custody; when it found Mother in contempt of the August 20, 1999 interim custody order; and when it abrogated Mother's right to due process by refusing to allow one of Mother's witnesses to testify. We hold that the trial court properly heard argument on Father's motion for modification absent a showing of changed circumstances. We also hold that Mother had ample time to present her case with regard to Father's motion. In addition, we hold that the evidence was sufficient to support the trial court's decision to grant Father's petition for contempt. Further, we hold that as Mother had adequate notice and an opportunity to be heard and defend herself, the trial court did not violate Mother's due process rights. Accordingly, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. The parties were married in 1986. They are the parents of two male children: P.M.P., born October 16, 1989, and K.L.P., born August 8, 1991. On July 16, 1992, Mother filed a petition under the Protection from Abuse Act and the parties separated. On July 27, 1992, Father filed for divorce in Allegheny County. Mother filed an an-

swer on August 18, 1992, in which she included a claim for child support, spousal support, and alimony *pendente lite*. On September 10, 1992, the parties agreed to an order granting Mother primary physical custody of the children and Father partial custody in the nature of visitation. In 1994, a custody trial was held. As a result, on December 9, 1994, the Allegheny County court awarded Mother primary physical and legal custody, and partial physical custody with expanded visitation to Father. Father appealed this order. On April 16, 1997, this Court affirmed the trial court's order. *See Peters v. Garr*, 698 A.2d 677 (Pa.Super.1997) (unpublished memorandum).

¶ 3 On September 11, 1997, Father filed a petition for special relief and motion to compel. On January 30, 1998, Father filed a motion for change of venue from Allegheny County to Mercer County where Mother and the children then resided. On February 13, 1998, Mother filed her answer opposing Father's motion for change of venue. Mother pointed out that although neither party has resided in Allegheny County since approximately October 1994, the December 1994 custody hearings took place in Allegheny County, and the children were under the care of a psychologist in Allegheny County. Mother volunteered to move back to Allegheny County with the children to avoid "the tremendous emotional, physical, and financial stresses of another custody and support court action." *See* Answer to Motion for Special Relief at 3. On February 13, 1998, the Allegheny County court granted Father's motion for change of venue, relinquishing jurisdiction of the case and transferring venue to Mercer County.

¶ 4 On March 10, 1998, Father filed a motion for modification of custody with the Mercer County Court of Common Pleas. The court appointed a master to conduct preliminary conferences. On April 8, 1998, the parties reached an agreement as to some issues regarding Father's partial custody. However, the parties were unable to agree on the remaining issues. Consequently, the court ordered a pre-trial conference to be held on August 28, 1998. On July 27, 1998, Father filed a petition for contempt of the court's April 8, 1998 custody order. At the pre-trial conference, the court scheduled a hearing on Father's motion for modification to be held on October 29, 1998. Father withdrew his petition for contempt. Due to various requests for continuances, the hearings on Father's motion for modification did not commence until June 1, 1999. They continued on August 20,[1] October 21, October 29, November 16, and November 17, 1999.

¶ 5 Meanwhile, on September 30, 1999, Father filed a petition, asking the court to find Mother in contempt of the court's August 20, 1999 interim custody order. The court issued a rule to show cause. On October 21, 1999, Mother filed an answer to the rule to show cause and counterclaimed for contempt. On November 18, 1999, following extensive hearings on Father's motion for modification and the petitions for contempt, the court awarded shared legal custody of the minor children to the parties and primary physical custody of the children to Mother, subject to Father's enumerated partial custody. The court also found Mother in willful contempt of the court's August 20, 1999 custody order. The court ordered Mother to serve sixty (60) days in the Mercer County jail or pay $1,000.00 towards Father's attorney's fees within ten days to purge herself of the contempt. Further, the court found Mother's allegation of con-

---

1. On August 20, 1999, the court issued a temporary custody order to remain in place until the court administrator was able to schedule another custody hearing.

tempt against Father to be without merit. On November 29, 1999, Mother filed post-trial motions. On December 2, 1999, the court deemed that Mother had purged the contempt by paying the requisite $1,000.00. Mother filed the instant timely appeal from the November 18, 1999 orders on December 16, 1999.

¶ 6 On appeal, Mother presents the following Statement of Questions Involved:

DID THE TRIAL COURT ERR IN CONDUCTING A HEARING ON A PETITION TO MODIFY CUSTODY WHEN [FATHER] HAD MADE NO ATTEMPT TO SHOW A CHANGE IN CIRCUMSTANCES?

DID THE TRIAL COURT ERR IN TRANSFERRING [SIC] A CUSTODY HEARING INTO A CONTEMPT HEARING AND NOT GIVING [MOTHER] THE OPPORTUNITY TO PRESENT HER CASE ON THE PROPOSED CUSTODY MODIFICATION?

DID THE EVIDENCE JUSTIFY A FINDING THAT [MOTHER] WILLFULLY VIOLATED AN EARLIER COURT ORDER AND WAS IN CONTEMPT OF COURT?

WAS [MOTHER] DENIED DUE PROCESS OF LAW WHEN SHE WAS ADJUDGED IN CONTEMPT OF COURT ON THE BASIS OF HER CHILDREN'S TESTIMONY WITHOUT AN OPPORTUNITY TO PRESENT EXPERT TESTIMONY THAT THE CHILDREN HAD BEEN COERCED BY THEIR FATHER?

(Mother's Brief at 4).

¶ 7 Our scope of review of child custody issues is well established:

On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Anderson v. McVay,* 743 A.2d 472, 474 (Pa.Super.1999) (quoting *Zummo v. Zummo,* 394 Pa.Super. 30, 574 A.2d 1130, 1142 (1990)).

¶ 8 In her first issue, Mother asserts that the trial court erred when it held a hearing on Father's motion for custody modification absent an allegation of "changed circumstances." Mother argues that there was no cause for a hearing because Father failed to establish changed circumstances in his motion. We disagree.

Our legislature has granted trial courts the authority to modify existing custody orders. Until 1988, however, courts could not do so unless there was a sufficient showing of a change in circumstances. **In that year, our Supreme Court definitively ruled that such a showing is no longer required.** Thus, the paramount and sole pertinent consideration in discerning the continuing validity of a custody order is, as in all such determinations regarding children, the best interests of the children involved.

*Choplosky v. Choplosky,* 400 Pa.Super. 590, 584 A.2d 340, 341 (1990) (citations omitted) (emphasis added). *See Karis v. Karis,* 518 Pa. 601, 544 A.2d 1328 (1988). Thus, we conclude that, pursuant to applicable Pennsylvania law, the trial court properly explored the possibility of modifi-

cation of custody in the absence of a showing of changed circumstances.[2]

¶ 9 In her second issue, Mother asserts that the trial court erred by transforming what should have been a hearing on custody modification into a hearing on Father's contempt petition. Mother argues that although the court began conducting hearings on Father's motion for modification of custody on June 1, 1999 and continued on August 20, 1999, she was unable to present her case fully. Mother contends that after Father filed his petition for contempt on September 30, 1999, the court focused solely on Father's petition. Mother avers that, although hearings were held subsequently, the court never resumed the custody hearing halted on August 20th. Mother complains that the court refused to hear any testimony that did not pertain directly to the contempt petition. Thus, Mother concludes, she was denied the opportunity to present her witnesses on the custody issue. Because Mother failed to include any citation to authority in support of her argument, we conclude that it is waived. *See* Pa. R.A.P. 2119(a) (mandating that arguments on each issue include citation to and discussion of authorities as are deemed pertinent).

¶ 10 Moreover, our examination of the record reveals that the June 1st custody hearing consisted solely of direct examination and cross-examination of Father's witnesses. The purpose of the August 20th hearing was strictly to fashion a temporary custody order to remain in place until the court administrator was able to schedule another custody hearing. A custody hearing was eventually scheduled for January 24, 2000. In the meantime, Father filed his petition for contempt on Sep-

tember 30, 1999. The court held its first hearing on the contempt petition on October 21, 1999. The parties and their counsel were present at the hearing. Two witnesses for Father testified and two witnesses for Mother testified. On October 22, 1999, the court heard both Mother and a witness for Mother testify. On October 29, 1999, two more witnesses testified on Father's behalf. The court also heard *in camera* testimony from the children. On November 16, 1999, four witnesses testified on Mother's behalf and Mother's counsel called Father to the stand as on cross-examination. The same day, the court held another *in camera* conference with the children and the parties' attorneys. On November 17, 1999, Mother's attorney continued direct examination of Mother, Father's attorney had the opportunity to cross-examine and Mother's counsel conducted redirect examination. On November 18, 1999, the court handed down its order. In the course of receiving evidence regarding the parties' alleged contempts, the court also received evidence about the parties' character and parenting abilities. Thus, we conclude that Mother had ample opportunity to present her evidence regarding modification of the custody agreement. *See also* *Steele v. Steele*, 376 Pa.Super. 174, 545 A.2d 376, 378 (1988) (recognizing that as result of contempt hearing trial court has right to temporarily modify custody order at any time, even where father had not filed motion for modification, so long as modification was in best interest of child).

¶ 11 Mother's third issue is an assertion that the court's finding of contempt was not supported by sufficient evidence. Specifically, Mother argues that there was insufficient evidence to find that she acted

---

**2.** Mother admits, by the end of her argument on the issue, that Pennsylvania law no longer requires a threshold demonstration of changed circumstances. *See* Mother's Brief at 12.

willfully in violation of the court's custody order. We disagree.

¶ 12 "Each court is the exclusive judge of contempts against its process." *Fatemi v. Fatemi*, 371 Pa.Super. 101, 537 A.2d 840, 846 (1988) (citing *Neshaminy Water Resources Authority v. Del–Aware Unlimited, Inc.*, 332 Pa.Super. 461, 481 A.2d 879 (1984)). The contempt power is "essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute." *Marian Shop, Inc. v. Baird*, 448 Pa.Super. 52, 670 A.2d 671, 673 (1996) (citing *Fisher v. Pace*, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569 (1949)). When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge. *Id.* (citing *Fenstamaker v. Fenstamaker*, 337 Pa.Super. 410, 487 A.2d 11 (1985)); *Sinaiko v. Sinaiko*, 445 Pa.Super. 56, 664 A.2d 1005, 1009 (1995) (citing *Goodman v. Goodman*, 383 Pa.Super. 374, 556 A.2d 1379 (1989), *appeal denied*, 523 Pa. 642, 565 A.2d 1167 (1989)). On appeal from a court's order holding a party in contempt of court, our scope of review is very narrow. *Id.* "We are limited to determining whether the trial court committed a clear abuse of discretion." *Id.* (citing *Mueller v. Anderson*, 415 Pa.Super. 458, 609 A.2d 842, 842–43 (1992)). *See Guadagnino v. Montie*, 435 Pa.Super. 603, 646 A.2d 1257, 1259 (1994) (citing *Steele, supra* at 378).

A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to be found in civil contempt. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court order.... To impose civil contempt the trial court must be convinced beyond a reasonable doubt from the totality of evidence presented that the contemnor has the present ability to comply with the order.

*Sinaiko, supra* at 1009–10 (citations omitted).

¶ 13 In the instant case, the trial court found that Mother "willfully and with intent to influence the father forced herself within the [50–foot] 'no-fly zone'" at the children's ice hockey tryouts. *See* Order, November 18, 1999, at 2. The court also found:

2. That the natural mother has over a course of time entered into a course of conduct calculated to frustrate the custodial rights of the natural father.

\* \* \*

4. That the natural mother together with her boyfriend entered into a conspiracy to influence the testimony of her children, the aim being to cause them to recant their then existing testimony and also to implant upon the minds of the children a bogus construct of what was obviously a fight between the natural mother and her boyfriend and the boyfriend's idiosyncratic attack upon one of the children's wrestling dolls....

*Id.* Thus, the court declared Mother's testimony "incredible in those matters critical to this decision and [found] the testimony of [Father] and his witnesses to be credible." *Id.* We are mindful that this Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor. *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa.Super.1999) (citing *Alfred v. Braxton*, 442 Pa.Super. 381, 659 A.2d 1040, 1043 (1995)). Therefore, we cannot conclude that the trial court abused its discretion. *See Guadagnino, supra* (holding trial court

did not abuse its discretion in finding mother in contempt of custody order and transferring custody to father based on evidence that mother continually opposed father's right of access to child, that she telephoned father with frequency that bordered on harassment, that she was confrontational with father in front of child, that she refused to transfer child to father at times and places appointed, and that on one occasion when she was supposed to transfer child to father, she went instead to police station and claimed that father was attempting to kidnap her child). Accordingly, we hold that the court properly found Mother in contempt of its order.

¶ 14 In her fourth issue, Mother asserts that she was denied due process of law when she was held in contempt based on her children's testimony without being permitted to present expert testimony that the children had been coerced to lie by Father. Mother argues that her sentence of sixty (60) days in jail or payment of $1,000.00 in attorney's fees, indicates that she was found to be in criminal contempt. Mother contends that she was deprived of the opportunity to present a complete defense because the court refused to allow the testimony of Dr. Donna Zaffy, a psychologist with whom Mother and the children had had a therapeutic relationship. We disagree.

> Contempt of court is the obstruction of the court's orderly process. It may be committed directly or indirectly. It is direct when committed in the court's presence. Contempt is a generic concept, distinguished by two types, criminal and civil contempt. The difference is not of the essence, but of the purpose sought by their use. The [gravamen] of both is obstruction of orderly process, and each serves a different purpose for regulating obstruction.

> Direct contempt is obstruction by conduct, word or deed in the presence of the court and is a summary offense. It may be sanctioned as civil or criminal contempt depending upon the purposes sought by the court. It is summary because the proofs are evident; the authority and orderly process of the court are directly confronted upon its open record and the evidence is plain and usually self-accusing.

> Indirect contempt is obstructive conduct committed beyond the court's presence. Such conduct is not self-evident or self-accusatory as when one refuses in the court's presence to do a thing and proof of its commission is required. Therein lies the main difference between contempt in the court's presence and conduct beyond. When one is charged with indirect contempt those charging such contempt are put to the usual proofs required to convict for any charge, including the right to trial by jury. This is so, because the court has no direct, immediate proof of something beyond its immediate view.

*Crozer–Chester Medical Center v. Moran,* 522 Pa. 124, 130–31, 560 A.2d 133, 136 (1989).

> The distinction between criminal and civil contempt is . . . a distinction between two permissible responses to contumacious behavior. . . .

> These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal. Dominant purpose of coercion or punishment is expressed in the sanction im-

posed. A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain time of imprisonment or a fine which the contemnor is powerless to escape by compliance.

*Diamond v. Diamond,* 715 A.2d 1190, 1194 (Pa.Super.1998) (quoting *In re Martorano,* 464 Pa. 66, 77–80, 346 A.2d 22, 27–29 (1975)) (citations omitted). *See Flannery v. Iberti,* 763 A.2d 927, 929 (Pa.Super.2000) (citing *Diamond, supra*) (stating that contempt is civil in nature, rather than criminal, if contemnor is given opportunity to purge himself before imposition of punishment); *Sinaiko v. Sinaiko,* 445 Pa.Super. 56, 664 A.2d 1005, 1009 (1995) (quoting *Colbert v. Gunning,* 368 Pa.Super. 28, 533 A.2d 471, 472 (1987)) (stating that if contemnor is given opportunity to purge himself before imposition of punishment, contempt order is civil in nature). Further, "[w]hile it is clear that a court may impose an unconditional fine in civil contempt, it may do so only if the purpose is not to punish but to compensate for losses suffered by the complainant...." *Colbert, supra* (citing *Brocker v. Brocker,* 429 Pa. 513, 241 A.2d 336 (1968)).

¶ 15 In the instant case, the court found Mother in contempt and, to vindicate its authority, imposed a sentence of sixty (60) days in jail or the opportunity to purge the contempt by paying $1,000.00 in attorney's fees. *See Flannery, supra; Diamond, supra; Sinaiko, supra.* Thus, the court provided Mother with the opportunity to purge, the purpose of which was not to punish Mother but to compensate Father for the costs of litigating the contempt petition. *See Colbert, supra.* Therefore, we conclude that the contempt was civil in nature.

¶ 16 "Procedural due process requires, at its core, 'adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case.'" *Commonwealth v. Fahy,* 558 Pa. 313, 325, 737 A.2d 214, 220 (1999) (quoting *Krupinski v. Vocational Technical School,* 544 Pa. 58, 61, 674 A.2d 683, 685 (1996)); *Hahalyak v. A. Frost, Inc.,* 444 Pa.Super. 494, 664 A.2d 545, 550 (1995). Instantly, Father filed his petition for contempt on September 30, 1999. The same day, the trial court issued a rule to show cause. On October 21, 1999, Mother filed an answer and counter-claimed for contempt. Thus, Mother had notice of not only the existence of the petition for contempt but also of the allegations contained in the petition. *See id.* The court took testimony on October 22 and 29, 1999, and November 16 and 17, 1999. At these hearings, Mother presented witnesses and gave testimony herself. Thus, she was provided with ample opportunity to be heard and a chance to defend herself. *See id.* Therefore, the trial court did not violate Mother's constitutional right to due process.

¶ 17 Further, the only specific argument that Mother presents concerning the alleged abrogation of her due process rights is that the trial court excluded Dr. Zaffy's testimony. Mother had included Dr. Zaffy's name among her list of witnesses to be presented at the custody hearings. During discovery, Father requested Dr. Zaffy's records for examination to prepare for trial. Mother refused to sign a waiver to allow the records to be released. Consequently, Dr. Zaffy refused to provide them to Father. The trial court ordered Dr. Zaffy to produce her records. Dr. Zaffy again refused, invoking professional privilege and citing her canons of ethics. As a result, the court barred the presentation of Dr. Zaffy's testimony for

any purpose. Thus, Mother cannot now be heard to complain that she was prevented from presenting Dr. Zaffy's testimony when it was Mother's refusal to release the records which caused the court to bar Dr. Zaffy's testimony.

¶ 18 Based upon the foregoing, we hold that the trial court properly explored the possibility of modification of custody in the absence of a showing of changed circumstances. We also hold that Mother had ample time to present her case regarding Father's motion for modification. In addition, we hold that Father presented sufficient evidence to support the trial court's finding of Mother in contempt. Further, we hold that the trial court did not violate Mother's due process rights as she had adequate notice and an opportunity to be heard and defend herself. Accordingly, we affirm the trial court's November 18, 1999 orders.

¶ 19 Orders affirmed.