J-A26019-20

2021 PA Super 17

| | | |
|---|---|---|
| DAVID AND GAIL BARNA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GERARD D. AND JEAN M. | : | |
| LANGENDOERFER | : | |
| | : | No. 938 EDA 2020 |
| Appellants | : | |

Appeal from the Order Entered March 4, 2020
In the Court of Common Pleas of Wayne County Civil Division at No(s):
No. 2016-00442

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.*

OPINION BY LAZARUS, J.:                                **FILED FEBRUARY 9, 2021**

Gerard D. Langendoerfer and Jean M. Langendoerfer (Langendoerfer) appeal from the order, entered in the Court of Common Pleas of Wayne County, finding Langendoerfer in contempt and ordering Langendoerfer to pay counsel fees and costs in the amount of $3,186.27.  After our review, we affirm.

David Barna and Gail Barna (Barna) share a common chain of title and a boundary line with Langendoerfer in Canaan Township, Wayne County. Langendoerfer's property was subdivided from the original tract of land owned by Barna's predecessors in title, Andrew Barna and Olga Barna, who conveyed that subdivided parcel to Peter Sklarsky and Stephanie Sklarsky,

---

* Former Justice specially assigned to the Superior Court.

Lanagendoerfer's predecessor in title, by deed dated September 4, 1973. This conveyance was subject to various restrictive covenants and conditions.[1] It is undisputed that Langendoerfer acquired title, by deed dated January 8, 2003, subject to the restrictive covenants. Of relevance here, Langendoerfer's deed states: "There shall be no other buildings, besides *a residence with an attached garage*, constructed on the property." Deed, 6/17/14 (emphasis added).[2]

_____

[1] The deed conveyance from Andrew Barna and Olga Barna to Peter Sklarsky and Stephanie Sklarsky contained the following language following recital of the restrictive covenants:

> And the said grantees accept this conveyance subject to the easements, restrictions and conditions above set forth and for themselves, their heirs and assigns, covenant and agree with the grantors, their heirs and assigns, that the said grantees their heirs and assigns *shall forever faithfully observe and perform the several restrictions and conditions and each of them*.

Deed, September 4, 1973 (emphasis added).

[2] A building restriction is distinct from a use restriction. The two restrictions have been distinguished as follows:

> Restrictions limiting the right of the owner to deal with his land as he may desire fall naturally into two distinct classes, the one consisting of restrictions on the type and number of buildings to be erected thereon, and the other on the subsequent use of such buildings. The restrictions in the former class are concerned with the physical aspect or external appearance of the buildings, those in the latter class with the purposes for which the buildings are used, the nature of their occupancy, and the operations conducted therein as affecting the health, welfare and comfort of the neighbors.

When Langendoerfer acquired the property in 2003, the residence, which was built in the 1970s, shared a common wall with a garage. Langendoerfer converted that garage into living space.

On June 19, 2016, Langendoerfer obtained a building permit for a 24 x 36 foot garage. Langendoerfer constructed the garage next to the residence, but it did not share a common wall with the residence.

On September 1, 2016, Barna filed a writ of summons against Langendoerfer, followed by a complaint seeking declaratory and injunctive relief. Following a bench trial, the Honorable Janine Edwards presiding, the court entered a verdict in favor of Barna. The court ordered Langendoerfer to "attach" the freestanding garage on the Langendoerfer property, to the Langendoerfer residence, on or before March 31, 2019. *See* Order, 3/6/18.[3]

In an attempt to attach the garage to the residence, Langendoerfer constructed a pergola/breezeway between the residence and the garage. On June 17, 2019, Barna filed a petition for contempt, claiming that "[a]s of June 10, 2019, [Langendoerfer has] failed to comply with the [court's o]rder of March 6, 2018, [and] more specifically as of March 31, 2019, [Langendoerfer

---

*Jones v. Park Lane for Convalescents, Inc.*, 120 A.2d 535, 538 (Pa. 1956); *Tate v. Moran*, 400 A.2d 217 (Pa. Super. 1979).

[3] Langendoerfer filed a post-trial motion, which the court granted and which modified the verdict, allowing Langendoerfer an extension to May 31, 2018, to remove trees from the easement area and a freestanding storage shed. *See* Order, 3/20/18. Those issues are not relevant to this appeal.

has] not 'attached' the garage to the residence as directed in the March 6, 2018 [v]erdict." Petition for Contempt, 6/17/19, at ¶¶ 7, 10.

The court held hearings on the petition for contempt on August 21, 2019, and October 4, 2019. On November 21, 2019, the court determined that the purpose of the restrictive covenant was to limit the number of buildings that could be constructed on the property, and that the language clearly allows for one residence and one attached garage. The court did state that the term "attached" was ambiguous. After reexamining the transcript and exhibits, the court found the pergola/breezeway did not connect the garage to the residence with a common wall, and therefore was not "attached." The court also found Langendoerfer did not act in good faith by failing to timely comply with the court's order enforcing the restrictive covenant. The court entered an order of contempt against Langendoerfer.

Barna filed a petition seeking counsel fees and costs in the amount of $3,126.87. On February 3, 2020, the court held a hearing at which Langendoerfer again argued the garage was in fact "attached" to the residence and objected to the claim for counsel fees and costs. Barna argued that because the pergola/breezeway is an open structure, not sharing a common wall with the residence, the garage was a detached building and, therefore, the garage was not in conformity with the court's order enforcing the restrictive covenant. N.T. Hearing on Plaintiff's Request for Counsel Fees, 2/3/20, at 8-10; N.T. Hearing on Petition for Contempt, 8/21/19, at 20.

On appeal, Langendoerfer raises one issue: "Whether the trial court erred in redefining the word 'attached' and using that limited semantic to find [Langendoerfer] in contempt[,] thereby committing an abuse of discretion." Appellant's Brief, at 7.

In reviewing contempt orders, we must consider that:

Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge. On appeal from a court's order holding a party in contempt of court, our scope of review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion.

*Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001) (citations and quotation marks omitted).

Although restrictive covenants are not favored, they are legally enforceable and strictly construed against the party seeking enforcement. *Morean v. Duca*, 430 A.2d 988, 990 (Pa. Super. 1981). In construing a restrictive covenant, we must ascertain the intentions of the parties by examining the language of the covenant in light of the subject matter thereof, the apparent purpose of the parties and the conditions surrounding execution of the covenant. *Dreher Twp. Board v. Solitron Dev. Co.*, 481 A.2d 1207, 1211 (Pa. Super. 1984). Where the language of a deed or a restriction is not clear, in order to ascertain the intention of the parties its language should be interpreted in the light of the subject matter, the apparent object or purpose

of the parties, and the conditions existing when it was made. ***Parker v. Hough***, 215 A.2d 667, 670 (Pa. 1966).

Here, the court determined that, at the time the covenant was made in 1973, the intention of the parties was clearly expressed—the covenant specifically mandates against construction of a garage that is not attached to the residence. As noted above, the court found that the term "attached," as used by the parties at the time the covenant was made, ambiguous. In order to determine the meaning of the term "attached," as intended by the parties, the court looked to the conditions existing when the covenant was made. When the residence was built, in the 1970s, the garage was attached to the residence, sharing a common wall. From this, the court inferred that this was what the parties intended by the restrictive covenant. We agree.

The breezeway/pergola,[4] constructed between the residence and garage, which connects the residence with the garage, is not a substitute for an attached garage; the residence and garage do not share a common wall. In this context, the court's determination that the term "attached" garage envisioned a common wall was not a distortion of that term.

We conclude, therefore, that the court's determination that Langendoerfer was in contempt of the court's order enforcing compliance with

---

[4] Merriam-Webster defines pergola as "a structure usually consisting of parallel colonnades supporting an open roof of girders and cross[-]rafters." ***See*** https://www.merriam-webster.com/dictionary (last visited 1/23/21); ***see also*** Trial Court Opinion, 3/6/18, at 2.

the restrictive covenant was not a clear abuse of discretion.  ***Garr***, ***supra***.

We affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/09/2021