J-S25001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| M.A.E. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| T.L.K. | : | |
| | : | |
| Appellant | : | No. 145 WDA 2022 |

Appeal from the Order Entered January 12, 2022
In the Court of Common Pleas of Erie County Civil Division at No(s):  No 13301-2013

BEFORE:  BENDER, P.J.E., DUBOW, J., and KING, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED:  October 20, 2022**

T.L.K. (Father) appeals from the trial court's order, dated January 11, 2022, and entered January 12, 2022, that denied his petition for contempt related to a child custody order, dated October 30, 2020.  In his petition, Father claimed M.A.E. (Mother) was in violation of that order.  After review, we affirm.

Our review of this contempt matter is guided by the following:

Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute.  When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge.  On appeal from a court's order holding a party in contempt of court, our scope of review is very narrow.  We are limited to determining whether the trial court committed a clear abuse of discretion.

*Barna v. Langendoerfer*, 246 A.3d 343, 346 (Pa. Super. 2021) (quoting *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001) (citations and quotation marks omitted)).

Taking the above recitation of the law regarding contempt into consideration, and following our review of the record, Father's brief,[1] and the thorough analysis provided in the opinion authored by the Honorable Stephanie Domitrovich of the Court of Common Pleas of Erie County, we conclude that Judge Domitrovich properly addressed all the issues presented by Father. Accordingly, we adopt Judge Domitrovich's opinion as our own for purposes of our appellate review and affirm the order on appeal on the basis espoused therein.

Order affirmed.

---

[1] Mother did not file a brief with this Court.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2022

MILISSA A. ENDERS,
Plaintiff/Appellee

vs.

TERRY L. KERSTETTER,
Defendant/Appellant

:  COURT OF COMMON PLEAS OF
:  ERIE COUNTY, PENNSYLVANIA
:
:  FAMILY DIVISION
:
:  Erie County Docket No. 13301-2013
:
:  PA SUPERIOR COURT
:  145 WDA 2022

**Appearances:** Terry L. Kerstetter, *pro se*, Appellant
Patrick W. Kelley, Esq., counsel for Appellee Milissa A. Enders

## <u>OPINION</u>

Domitrovich, J, February 22, 2022

This custody matter is before the Court on Terry L. Kerstetter's [Appellant] timely appeal from a January 11, 2022, Order, denying Appellant's December 8, 2021, Petition for Contempt of Custody Order after he failed to carry his burden of proof under the preponderance of the evidence standard. Appellant did not enter or offer properly any evidence in support of his claims before or during his January 11, 2022, hearing.

Appellant failed to serve properly this Trial Court with his Notice of Appeal under Rule 1925(a)(2)(i), and he filed no Proof of Service indicating he served counsel of record. Moreover, Appellant did not file any objections or motions at the hearing to preserve any issues for appeal. Appellant also attached improperly his so called "exhibits" that he failed to present to the Trial Court at or before the custody contempt proceeding.

EXHIBIT
E

Appellant *pro se* failed to serve the Trial Court, which this Trial Court discovered after reviewing the list of appeals on the AOPC's UJS Portal Application. Upon learning of Appellant's lack of notice to this Trial Court, this Trial Court directed Appellant on February 3, 2022, to file a Concise Statement of Matters Complained of on Appeal within twenty-one (21) days of the entry of the January 11, 2022, Court Order. However, this Trial Court later discovered its Order was not necessary as Appellant, who did not properly serve this Trial Court, included in his Notice of Appeal a three-page list of eight (8) complaints and comments that is, in essence, his Concise Statement of Issues, even though this document was not labeled as such.

On appeal, Appellant raises eight (8) claims in his unlabeled Concise Statement. However, these claims can be consolidated into one overarching issue:

> Whether this Trial Court erred or abused its discretion by denying Appellant's December 8, 2021, Petition for Contempt of Custody Order where Appellant failed to meet his burden of proof under the preponderance of evidence standard, and where Appellant failed to present to this Trial Court and opposing counsel any of the exhibits in support of his claims which he now attaches after the hearing and decision has been rendered, and where all of Appellant's claims and factual averments were already heard and addressed before the Trial Court in prior proceedings and are therefore precluded from being re-litigated under the doctrines of res judicata and collateral estoppel.

RR 000021

## BACKGROUND

Appellant *pro se* has a long, prolific filing history with regards to this case. Appellant has filed no fewer than eight (8) Petitions for Contempt of Custody Orders since the commencement of this case in 2013, only one of which was meritorious. Moreover, Appellant previously filed both a contempt petition and a petition for special relief over these exact same claims and factual averments, both of which were heard and denied by Judge Elizabeth Kelly of the Erie County bench for the reasons stated in her Court Orders. *See Order dated May 10, 2021, and Order dated September 29, 2021.*

In the instant case, Appellant filed a Petition for Contempt of Custody Order on December 8, 2021, [hereafter the "December 8, 2021, Contempt Petition"]. In this December 8, 2021, Contempt Petition, Appellant alleged Mother Milissa A. Enders [Appellee] was in violation of the October 30, 2020, Custody Consent Agreement. The Order, in relevant part, provides as follows:

> Neither party shall consume alcohol while the child is in his or her presence and neither party shall engage in illegal drug activity.
>
> \*       \*       \*       \*       \*
>
> This custody arrangement may be modified by an agreement of the parties when required for the best interest of the child. The term "mutual agreement" contemplates good faith discussions by both parents to reach an agreement as to specific dates and times of partial custody or visitation, and the unilateral determination of one

RR 000022

parent to deny contact shall be viewed as a violation of this provision. *Custody Consent Agreement dated Oct. 30, 2020,* paras. 5 and 16; *c.f. Petition for Contempt of Custody Order dated December 8, 2021.*

In the instant case, Appellant claims Appellee is currently in violation of the October, 30, 2020, Custody Order, alleging: (1) Appellee abused alcohol on prior occasions resulting in Office of Children and Youth [OCY] involvement and was allegedly convicted of child endangerment; and (2) Appellee violated the October 30, 2020, Custody Order by not reaching a mutual agreement with Appellant regarding partial custody of Minor Child.

However, Appellant offered no evidence in support of either of these claims before or during the January 11, 2022, contempt hearing. *See Petition for Contempt of Custody Order dated December 8, 2021, and Tr.* at 12-14. Appellant also inaccurately and incorrectly argued confidential documents that Appellant had subpoenaed were filed by the subpoenaed party into the public record. This Trial Court repeatedly informed Appellant that no such documents had been received or filed, and Appellant has the responsibility to ensure the subpoenas are properly served and evidence he wishes to use are properly entered into the Record. *Tr.* at 12-14. This Trial Court also explained to Appellant how Appellant may ensure that subpoenaed documents are properly authenticated and entered into evidence. *Tr.* at 13-14. Appellant was unreceptive to receiving this information, and instead

RR 000023

continued to argue with this Trial Court about said documents. *Id.* at 14. Attorney Kelley for Appellee also tried to explain the procedure to Appellant, but to no avail.

In light of Appellant's insistence and in an attempt to accommodate Appellant as a *pro se* litigant, this Trial Court further inquired as to what documents Appellant was referring to, reiterating yet again that no documents from Office of the Children and Youth of Erie County had been received and that Appellant himself was not offering any evidence to support his claims:

Appellant: It's interesting because I wonder why they actually sent me those from Harrisburg.

The Court: Sent you what from Harrisburg? You don't have anything for me today sir. I don't see any paperwork in front of you.

*Tr.* at 14. *See also, c.f., Tr.* at 3 (Appellant asking this Trial Court for a copy of the October 30, 2020, Order because he did not have anything with him).

Upon hearing this, **Appellant replied "That's okay. There's always next time."** *Tr.* at 13. *Emphasis added.*

Moreover, Appellant's December 8, 2021, Contempt Petition contains no alleged violations committed by Appellee that were active, ongoing, or current. Both violations alleged by Appellant had already been addressed by Judge Elizabeth Kelly of the Trial Court on two separate previous occasions, and, therefore, are precluded from being considered again under the doctrines of res

RR 000024

judicata and collateral estoppel. *See Order dated May 10, 2021, and Order dated September 29, 2021; see also Tr.* at 9.

Historically, Appellant had previously filed a Petition for Contempt of Custody Order on March 8, 2021, [hereafter the "March 8, 2021, Contempt Petition"] in which Appellant alleged, in relevant part, that Appellee had violated the Custody Order by consuming alcohol in front of Minor Child. Said March 8, 2021, Contempt Petition was denied by Judge Elizabeth K. Kelly on May 10, 2021. *See Order dated May 10, 2021.* Appellant then filed a subsequent Petition for Special Relief on July 14, 2021, [hereafter the "July 14, 2021, Special Relief Petition"], requesting in relevant part that Appellee enroll in drug and alcohol treatment "immediately" and for an emergency plan of action in the event Appellee became incarcerated as a result of her pending criminal charge. *See Petition for Special Relief dated July 14, 2021.* This July 14, 2021, Special Relief Petition was also clearly denied by Judge Elizabeth K. Kelly on September 29, 2021:

> Milissa A. Enders [Appellee] ... *is already engaged in treatment to address the concerns raised regarding her alcohol* use and *she remains available to serve as the Child's custodian.* Once Father [Appellant] is released from incarceration, allowing him the ability to exercise physical custody of the Child, he may pursue the same through an appropriate petition requesting modification of the October 30, 2020, Order of Court governing custody of the Child. *Order dated September 29, 2021.* (Emphasis added).

RR 000025

In the instant case, Appellee through her credible testimony and argument by her counsel, Attorney Patrick Kelley, rebutted Appellant's claims. Appellee gave credible and candid testimony that Appellee is already enrolled and has been involved in intensive outpatient alcohol treatment that Appellee is and has been sober since Appellee started her treatment, and that the treatment facility can conduct a random urine test on Appellee at any time. Tr. at 11-12. Appellee also gave credible and candid testimony that OCY was not involved after the previous 2018 and 2020 evaluations – the same evaluations upon which Appellant's claims are based, and which were addressed and disposed of during the Contempt hearing on May 10, 2021, and the Special Relief hearing on September 29, 2021. *See Tr.* at 9-11. Appellee also gave credible and candid testimony that Appellee had pled guilty to disorderly conduct after one of these incidents, not endangerment of the welfare of a child. *See Tr.* at 9-10.

On behalf of the Appellee, Attorney Patrick Kelley provided the relevant background to this case and informed this Trial Court that both of Appellant's allegations were already addressed already in the aforementioned prior proceedings. *Tr.* at 8-9. Attorney Patrick Kelley also informed this Trial Court that, contrary to Appellant's assertions, Appellee had never been incarcerated, and the charge to which Appellee had pled guilty was disorderly conduct, not child endangerment. *Tr.* at 7. Attorney Patrick Kelley also provided insight into

RR 000026

Appellant's "mutual agreement" claim, explaining how Appellant and Appellee struggled to find a specific time for telephone phone calls that worked well for both parties. *Tr.* at 9.

Appellant, without any proper legal objection, needlessly interrupted Appellee's testimony several times. *See, e.g., Tr.* at 10, 12. Moreover, Appellant presented no evidence to support any of his claims during this January 11, 2022, Contempt hearing. As stated previously, this Trial Court explained to Appellant that he needed to present properly evidence to this Trial Court in support of Appellant's claims, and that Appellant failed to provide this Trial Court with any evidence. *See again, Tr.* at 12-14. As stated previously, Appellant acknowledged this and replied "That's fine. There's always next time." *Tr.* at 14.

This Trial Court then placed its findings, conclusion and decision on the record. *Tr.* at 14. After doing so, this Trial Court gave Appellant, Appellee, and Attorney Patrick Kelley additional time to discuss a potential custody modification in order to reach a mutual agreement. To no avail, no mutual agreement could be reached. This Trial Court entered its Order, denying Appellant's December 8, 2021, Contempt Petition after finding and concluding Appellant failed to carry his burden of proof as the moving party in this custody contempt proceeding.

RR 000027

## APPLICATION OF LAW AND ANALYSIS

### A. Standard of Review

"Each court is the exclusive judge of contempts [sic] against its process." *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001). When reviewing a trial court's finding on a petition for contempt, appellate courts "are limited to determining whether the trial court committed a clear abuse of discretion." *P.H.D. v. R.R.D.*, 2012 PA Super 246, 56 A.3d 702, 706 (Pa. Super. 2012) (quoting *Flannery v. Iberti*, 763 A.2d 927, 929 (Pa. Super. 2000)).

"If the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion." *Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1123 (2000). Abuse of discretion only exists "if the trial court renders a judgment that is manifestly unreasonable, arbitrary, or capricious, or if it fails to apply the law or was motivated by partiality, prejudice, bias, or ill will." *Ambrogi v. Reber*, 932 A.2d 969, 974 (Pa. Super. 2007). Moreover, an abuse of discretion "is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. *Commonwealth v. Santos*, 176 A.3d 877 (Pa. Super. 2017).

RR 000028

Therefore, where there is no evidence on the record to indicate any "clear" misapplication of law during a contempt proceeding, nor any evidence of "manifestly unreasonable" judgment with regards to a trial court's findings in said contempt proceeding, there is also no abuse of discretion in that contempt proceeding.

## B. Legal and Evidentiary Standards

### 1. *Civil vs Criminal Contempt*

"Contempt may be of a civil or criminal character and criminal contempts[sic] are further divided into direct and indirect contempts[sic]." *Com v. Marcone*, 487 Pa. 572, 577, 410 A.2d 759, 762. (internal citations omitted). The difference between civil contempt and criminal contempt is that the civil contempt "has as its dominant purpose to enforce compliance with an order of court for the benefit of the party in whose favor the order runs," while criminal contempt has its "dominant purpose" in "the vindication of the dignity and authority of the court and to protect the interests of the general public." *Id.* (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947) and *Gompers v. Back's Stove and Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). Finally, the nature of the contemptuous act complained of is not the determining factor in whether the contempt is criminal or civil:

RR 000029

The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contumacious behavior[.] These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication of contempt is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal. *Marcone* at 578 (quoting *In re Martorano*, 464 Pa. 66, 77-78, 346 A.2d 22, 27-28 (1975)(footnotes omitted).

### 2. *Civil Contempt and Preponderance of the Evidence*

In the instant case, Appellant's December 8, 2021, Contempt Petition is clearly a petition in the nature of civil contempt. Appellant seeks the enforcement of the October 30, 2020, Custody Order for the benefit of himself as a private party, and no public interests or "judicial vindication" are at stake. Accordingly, this Trial Court applied the preponderance of evidence standard when evaluating Appellant's claims.

In civil contempt proceedings, the proper evidentiary standard is the preponderance of the evidence:

In order to sustain a finding of civil contempt, *the complainant must prove certain distinct elements by a preponderance of the evidence*: (1) that the contemnor had notice of the specific order or decree which she is alleged to have disobeyed; (2) that the act

RR 000030

constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Harcar v. Harcar*, 982 A.2d 1230, 1235 (Pa. Super. 2009) (citing *Stahl v. Redcay*, 897 A.2d 478, 489 (Pa. Super. 2006)).

"A preponderance of the evidence is 'the greater weight of the evidence, i.e., to tip a scale slightly is the criteria or requirement for preponderance of the evidence.'"

*In re Nevara*, 185 A.3d 342, 354 (Pa. Super. 2018)(quoting *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004).

In the instant case, Appellant failed to meet his burden of proof under the preponderance of evidence standard by failing to submit a single piece of evidence corroborating or supporting any of Appellant's claims to this Trial Court prior to or during the January 11, 2022, Contempt hearing. Appellant was informed repeatedly at this custody contempt hearing of his failure to produce evidence, and this Trial Court even explained how Appellant could properly submit evidence to the Trial Court. While the preponderance of evidence standard is lenient, a moving party must still submit some form of evidence at trial in order to support his claims. Instead, Appellant presented only unsupported, biased claims and previously litigated allegations before this Trial Court.

After hearing the credible testimony of Appellee and weighing Appellant's unsubstantiated assertions, this Trial Court reached its decision by weighing the credibility of the testimony presented and argument given. Appellant first testified

RR 000031

before this Trial Court as to his reasons for filing the instant Contempt Petition. *Tr.* at 2-5. Appellee then credibly responded as to all issues complained of in Appellant's instant Contempt Petition. Moreover, Appellee's counsel provided pertinent, relevant background as to Appellant's prior filings, each of which included Appellant's present claims that were previously adjudicated by another judge in prior court hearings. *Tr.* at 5-8.

After testimony from both parties, where Appellant never produced or presented any evidence to support his alleged claims, and after reviewing the relevant paragraphs in the September 29, 2021, Court Order, this Trial Court found and concluded Appellee credibly stated she was still actively enrolled and monitored in an intensive outpatient alcohol addiction treatment program and has remained sober throughout her treatment process. Therefore, this Trial Court found Appellee was not in contempt of the October 30th, 2020, Custody Order, and thereby denied Appellant's December 8, 2021, Contempt Petition.

### 3. *Doctrines of Preclusion: Res Judicata and Collateral Estoppel*

The evidence Appellant now submits on appeal was never submitted at the January 11, 2022, Custody Contempt hearing held by this Trial Court, and therefore, was not properly submitted. Moreover, this Trial Court notes every charge and incident report improperly attached to Appellant's Notice of Appeal occurred before the October 30th, 2020, Custody Order was issued. *See Pet. To*

RR 000032

*Appeal Denied Contempt of Custody dated January 21, 2022,* at pp. 5-12[1].
However, assuming arguendo these alleged violations occurred after the Trial
Court issued the October 30, 2020, Custody Order, this Trial Court would still be
required to deny Appellant's December 8, 2021, Contempt Petition because the
doctrines of res judicata and collateral estoppel bar appellants from re-litigating the
same issues and causes of action against the same parties after a final judgment on
those issues has been reached, and, as applied in the instant case, each of
Appellant's allegations, issues, and claims against Appellee have all been
previously heard, adjudicated and decided in prior hearings and are final
judgments.

The Pennsylvania Supreme Court has consistently held the doctrines of res
judicata and collateral estoppel bar a complainant from entering into new litigation
over claims and issues either already adjudicated, or capable of being adjudicated
in an earlier hearing:

> Res judicata – literally, a thing adjudicated – is a judicially-created
> doctrine. It bars actions on a claim, or any part of a claim, which
> was the subject of a prior action, or could have been raised in that
> action.... *[R]es judicata, or claim preclusion, prohibits parties
> involved in prior, concluded litigation from subsequently
> asserting claims in a later action that were raised, or could have*

---

[1] While the Information on page 12 was signed in November of 2020, the Information itself plainly states the underlying charge occurred on June 8th. Moreover, Appellee pled guilty to Disorderly Conduct, not Child Endangerment.

RR 000033

*been raised, in the previous adjudication....Collateral estoppel is*
*similar in that it bars re-litigation of an issue that was decided in*
*a prior action,* although it does not require that the claim as such be
the same.

*In re Coatesville Area School District,* 244 A.3d 373, 378-379 (Pa.
2021)(emphasis added)(internal quotations omitted)(citing *Wilkes*
*ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.,* 587 Pa. 590,
607, 902 A.2d 366, 376 (2006) *R/S Financial Corp. v. Kovalchick,*
552 Pa. 584, 588, 716 A.2d 1228, 1230 (1998); *Foster v. Mut. Fire,*
*Marine & Inland Ins. Co.,* 544 Pa. 387, 404, 676 A.2d 652, 661
(1996) *Balent v. City of Wilkes-Barre,* 542 Pa. 555, 563, 669 A.2d
309, 313 (1995); *and In re Estate of Bell,* 463 Pa. 109, 113, 343
A.2d 679, 681 (1975))(internal citations omitted).


The four elements of res judicata are: (1) the issue or issues in the current

case have already been adjudicated on in a prior proceeding; (2) the cause of action

in the current proceeding is the same as the cause of action in a prior proceeding;

(3) the parties to the current action are the same parties to the prior action; and (4)

the quality and capacity of the parties are the same as they were in the prior

proceeding. *Coatesville,* 244 A.3d at 379; *see also In re Estate of Tower,* 463 Pa.

93, 100, 343 A.2d 671, 674 (1975). Similarly, the four basic elements of collateral

estoppel are: (1) the issue is the same as in the prior litigation; (2) the prior action

resulted in a final judgment on the merits; (3) the party against whom the doctrine

is being asserted is the same as the party in the prior action; and (4) the person

against whom the doctrine is being asserted had a full and fair chance to litigate the

RR 000034

issue(s) in the prior action. *Coatesville* at 379; *see also Rue v. K-Mart Corp.*, 552 Pa. 13, 17, 713 A.2d 82, 84 (1998). However, courts sometimes also impose a fifth element, "namely, that resolution of the issue in the prior proceeding was essential to the judgment. See, e.g., *Office of Disciplinary Counsel v. Kiesewetter*, 585 Pa. 477, 484, 889 A.2d 47, 50-51 (2005)." *Coatesville* at 379.

These doctrines of res judicata and collateral estoppel developed to shield parties from the burden of re-litigating a claim with the same parties, and to protect the judiciary from the corresponding inefficiency and confusion that re-litigation of a claim would create. *Id.* Moreover, these doctrines are applicable to contempt proceedings and appeals. *See, e.g., Com. ex rel. Coburn v. Coburn*, 384 Pa. Super. 295, 558 A.2d 548 (1989) (implying appellant could have validly raised res judicata during his trial, and applying doctrine of collateral estoppel to reach its holding).

In *Coburn*, the Pennsylvania Superior Court held in part that the appellee was barred from raising the issue of appellant's paternity in a custody or contempt action due to the doctrine of collateral estoppel. *Coburn*, 384 Pa. Super. at 302-303 ("From this we find appellee is estopped from raising the issue of appellant's paternity.") In reaching this conclusion, the Pennsylvania Superior Court conducted an analysis and application of the four collateral estoppel elements. With regard to the first element, the Superior Court found the issue had already

RR 000035

been sufficiently addressed in a prior proceeding, and reasoned "absent an appeal taken directly from the Order or a showing of fraud," the existing order had properly settled the issue and therefore could not "be challenged by an aggrieved party in a subsequent proceeding." *Id.* at 302 (internal citations omitted).

With regard to the second element of collateral estoppel, the Pennsylvania Superior Court found *"[b]y failing to appeal the 1979 Orders, the finality of the determination of paternity has been decided on the merits." Id.* at 303 (Emphasis added). For the third element, the Superior Court found "[the] third requirement of estoppel of identity of parties is readily met in this case because appellee was a willful party to the 1979 Orders." *Id.* Finally, the Superior Court found the fourth element was satisfied as well, stating "Appellee's failure to object to paternity at that time does not negate the full and fair opportunity to litigate that was present. Appellee has not and can not raise any claim to fraud in this matter." *Id.* Accordingly, the Superior Court reached the following holding with regard to the collateral estoppel claim: "From this we find appellee is estopped from raising the issue of appellant's paternity." *Id.*

In the instant case, the doctrine of res judicata was appropriately raised at trial by Attorney Patrick Kelley for Appellee. *See Tr.* at 9. All four elements of res judicata are met here with regards to Appellant's alcohol and OCY allegations:

RR 000036

(1) Issues of Appellee's alleged alcohol use and treatment, a criminal charge, and Office of Children and Youth investigations based on the same facts were all previously adjudicated on May 10, 2021, and on September 29, 2021; *See Pet. For Contempt of Custody Order dated March 8, 2021; see Order dated May 10, 2021; see Pet. For Special Relief dated July 14, 2021; see Order dated September 29, 2021.*

(2) The causes of action alleged by Appellant in his December 8, 2021, Petition for Contempt of Custody and the subsequent January 11, 2022, hearing were previously adjudicated before another trial judge on May 10, 2021, and September 29, 2021;

(3) All parties involved in the January 11, 2022, custody contempt hearing are the same parties involved in the May 10, 2021, custody contempt hearing and the September 29, 2021, special relief hearing; and

(4) In this January 11, 2022, custody contempt hearing, Appellant and Appellee are of the same quality and capacity as each were in the prior May 10, 2021, and September 29, 2021, proceedings.

Therefore, since all four elements of res judicata are satisfied, the doctrine of res judicata bars Appellant from re-litigating here the same issues already previously adjudicated at prior hearings.

RR 000037

Appellant's allegations are also barred under the doctrine of collateral estoppel. First, Appellant's issues at the January 11, 2022, contempt hearing were Appellee's alcohol use and treatment, criminal charge, and Office of Children and Youth involvement. All of these issues were previously adjudicated in the earlier May 10, 2021, and September 29, 2021, hearings.

Second, there was a final judgment on the merits. As stated in *Coburn*, a failure to appeal Orders creates a final determination on the merits. *Coburn* at 303. Like the appellee in *Coburn*, Appellant in the instant case had the ability to appeal both the May 10, 2021, Order and the September 29, 2021, Order. Appellant's choice not to appeal timely said Orders therefore resulted in final determinations on the merits of the aforementioned identical issues considered in those Orders.

Third, Appellant is clearly the party the doctrine is being asserted against, and this Record reflects Appellant is the party who previously brought the same issues in the prior hearings. Fourth, Appellant did have a full and fair opportunity to litigate these identical claims at both of these prior proceedings. Appellant was served proper notice of the times of his hearings, and had the full ability to present evidence and litigate his claims at each of those prior hearings if he had chosen to do so.

The fifth element, less commonly applied, also weighs in favor of the applicability of collateral estoppel. Appellant's alleged alcohol use, alleged

RR 000038

criminal charge of child endangerment, alleged unfitness to parent, and alleged Office of Children and Youth involvement were all previously addressed in the Special Relief hearing on September 29, 2021. In order to decide whether to grant Appellant's Petition for Special Relief, the prior Court evaluated the credibility of all these claims, allegations, and issues, and disposed of these issues fully before reaching its decision. Said consideration is clearly reflected in Judge Kelly's September 29, 2021, Order. Thus, the fifth element of collateral estoppel is also satisfied in the instant case.

## C. Response to Appellant's Itemized Comments and Complaints on Appeal

"Claims not raised in the trial court may not be raised for the first time on appeal." *Circle K, Inc. v. Webster Trustee of Webster Irrevocable Grantor Trust*, 256 A.3d 461, 464 (Pa. Super. 2021); *see also Jahanshahi v. Centura Development Co., Inc.*, 816 A.2d 1179, 1189 (Pa. Super. 2003); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In the instant case, Appellant failed to preserve any of the largely nonsensical and borderline illegible comments and complaints he lists in his unlabeled, improperly submitted Concise Statement of Issues. The only objections raised by Appellant at the Contempt hearing were clearly and facially improper. *See Tr.* at 6, 10. After being corrected by this Trial Court and having his improper

RR 000039

objections overruled, Appellant even offered an apology to this Trial Court for interrupting Appellee's testimony. *See Tr.* at 12. Therefore, Appellant has waived the complaints and comments submitted improperly in Appellant's unlabeled Concise Statement of Issues. However, assuming *arguendo* Appellant's comments and complaints were preserved, this Trial Court will attempt to respond to the varied list of comments and complaints contained within Appellant's Notice of Appeal.

*1. The current Custody Order requires no party drink alcohol for any reason.*

The underlying allegation to this comment is without merit. Contrary to Appellant's bald-faced claims, Appellee credibly stated she is currently undergoing alcohol treatment through intensive outpatient care, as evidenced by the Record. Moreover, Appellee credibly stated under oath she has not consumed alcohol since beginning her treatment. Appellant offered no evidence to the contrary before or during the trial. On appeal, his improperly submitted evidence still only refers to alcohol consumption in 2018 and 2020, both of which occurred before the October 30, 2020, Custody Order and before Appellee began treatment, and both of which have been fully addressed previously by Judge Elizabeth Kelly in her past Orders dated May 10, 2021, and September 29, 2021.

RR 000040

*2. Appellant claims Appellee admitted under oath she was abusing quantities of alcohol while "in the care of" their Minor Child.*

This comment is very inaccurate, as evidenced by the Record. No such testimony as described by Appellant was given by Appellee during the January 11, 2022, Contempt hearing. To the contrary, Appellee credibly testified she has remained sober since beginning her alcohol treatment. While Appellee did credibly and candidly admit to having an alcohol abuse problem which she is addressing, she is already receiving intensive treatment for this. Moreover, this issue was already disposed of by Judge Elizabeth Kelly in the September 29, 2021, Special Relief hearing.

*3. Appellant claims Appellee gave alleged false testimony as to the nature of crime involved regarding Appellee's disorderly conduct plea that was originally filed as endangering the welfare of a child.*

To the contrary, Appellee gave no false testimony. With her counsel present, Appellee credibly testified she pled guilty to Disorderly Conduct. This plea was corroborated by Appellee's counsel Attorney Patrick Kelley. Appellant offered no evidence at this custody contempt hearing to contradict Appellee's testimony, only his own testimony to the contrary. Moreover, this was a contempt proceeding, not a custody modification trial. The only concerns within the scope of this hearing were whether Appellee had any new or ongoing violations of the October 30, 2020, Custody Order not previously addressed at the May 10, 2021, contempt proceeding or in the September 29, 2021, special relief hearing. Appellant failed to prove

RR 000041

Appellee committed any violations, and Appellant failed to provide and properly submit any exhibits or other evidence at the instant hearing.

*4. Appellant tries to construe a nonsensical argument for direct contempt against Appellee.*

Appellant's claim is both untrue and a mischaracterization of the law. As discussed above, a finding of direct contempt is a finding that one party committed an act or failed to perform an act that was ordered by the court, in the presence of the court. It is also a finding of criminal contempt. Appellee made no such act or failure to act at the hearing. Appellee was sober at her hearing, and credibly stated how she is effectively and earnestly participating in ongoing intensive outpatient treatment. Moreover, Appellant's underlying allegations date to 2018 and 2020, both of which pre-date the October 30, 2020, Custody Order, and both of which were previously disposed of in the May 10, 2021, contempt proceeding and the September 29, 2021, special relief hearing. After addressing these allegations in full during said proceedings, Judge Elizabeth Kelly issued Court Orders denying Appellant's March 8, 2021, Contempt Petition and Appellant's July 14, 2021, Petition for Special Relief.

Therefore, Appellant has failed to prove or even allege any current or ongoing contempt of the October 30, 2021, Custody Order, and the allegations underlying this comment are precluded from re-litigation under the doctrines of res judicata and collateral estoppel.

RR 000042

*5. and 8. Appellant for the first time, without any substantiation, knowing this Trial Court's decision denying his Petition for Contempt relief, enters now a guised request for recusal for another attempted opportunity to persuade another trial judge despite appellate review pending by the Superior Court.*

First, Appellant raised no objection at the hearing or prior to this hearing about the undersigned judge presiding over this Contempt hearing.

Second, and contrary to Appellant's assertions, this Trial Court properly concluded there was not sufficient evidence to support a finding of contempt against Appellee. Appellant now desires another trial judge be assigned so he can have another attempt to persuade another trial judge of the alleged worthiness of his petition despite his appeal to have appellate court review in the instant case.

*6 and 7. Appellant improperly attaches alleged copies and requests of confidential OCY reports and OCY Child line Abuse Registry that were neither properly authenticated nor admitted into the Record by this Trial court in the instant case.*

Appellant presented no copies of these reports to this Trial Court at the instant hearing and no copies to the opposing party. Moreover, these alleged incident reports are from 2018 and 2020. Both of these incidents were fully considered and disposed of at Appellant's prior two hearings with Judge Kelly. As explained at length above, the doctrines of res judicata and collateral estoppel preclude re-litigation of these issues.

Wherefore, all of Appellant's *pro se* issues, complaints and claims on appeal are without merit. This Trial court respectfully requests the Pennsylvania Superior

RR 000043

Court affirm this Trial Court's decision denying Appellant's Petition for Complaint for all of the detailed reasons as specifically addressed above.

BY THE COURT:

*Stephanie Domitrovich*
Stephanie Domitrovich, Judge

cc: Terry L. Kerstetter, 137 West 2nd Street, Erie, PA 16507
Patrick W. Kelley, Esq., 254 W, 6th Street, Erie, PA 16507
Milissa Enders, 2907 Glenwood Park Ave., Erie, PA 16508

RR 000044